J. Mark Chevallier (State Bar No. 04189170)
David L. Woods (State Bar No. 24004167)
James G. Rea (State Bar No. 24051234)
McGuire, Craddock & Strother, P.C.
2501 N. Harwood
Suite 1800
Dallas, Texas 75201
(214) 954-6800 – Telephone
(214) 954-6850 – Telecopier
Email: mchevaller@mcslaw.com
Email: dwoods@mcslaw.com
Email: jrea@mcslaw.com
**ATTORNEYS FOR DEBTOR and
DEBTOR-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | **CASE NO. 10-45097-DML-11** |
| **VILLAGE AT CAMP BOWIE I, L.P.,** | § | |
| | § | **CHAPTER 11** |
| **DEBTOR.** | § | |

## SECOND AMENDED DISCLOSURE STATEMENT WITH RESPECT TO SECOND AMENDED PLAN OF REORGANIZATION OF VILLAGE AT CAMP BOWIE I, L.P.

**[THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.]**

J. Mark Chevallier
David L. Woods
James G. Rea
MCGUIRE, CRADDOCK & STROTHER, P.C.
2501 N. Harwood
Suite 1800
Dallas, Texas 75201
Telephone: (214) 954-6800
Facsimile: (214) 954-6850
COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................................1

    A.  Background ................................................................................................1

        1.  In General ....................................................................................1

        2.  Events Leading to the Chapter 11 Filing ....................................1

    B.  Purpose of this Document ........................................................................2

    C.  Holders of Claims or Interests Allowed to Vote......................................3

    D.  Deadlines for Voting On and Objecting to The Plan; Date of Plan
        Confirmation Hearing ..............................................................................4

        1.  Time and Place of the Confirmation Hearing.............................4

        2.  Deadline for Voting For or Against the Plan ..............................4

        3.  Deadline for Objecting to Confirmation of the Plan...................4

        4.  Administrative Claims and Bar Date ..........................................4

        5.  Identity of Persons to Contact for More Information Regarding the
           Plan .............................................................................................5

    E.  Disclaimer ................................................................................................5

    F.  Plan Overview...........................................................................................6

        1.  Plan Summary .............................................................................7

II.  BACKGROUND .................................................................................................7

    A.  Description of the Debtor and the Debtor's Business...............................7

    B.  Significant Funded Indebtedness .............................................................9

    C.  Significant Funded Indebtedness .............................................................9

III.  SIGNIFICANT EVENTS DURING THE DEBTOR'S CHAPTER 11 CASE..................9

    A.  First-Day Orders ......................................................................................9

    B.  Advisors to the Debtor.............................................................................9

| | | |
|---|---|---|
| C. | Significant Court Orders | 9 |
| D. | Creditor-Related Activities | 9 |
| E. | Filing of Schedules and Statements of Financial Affairs | 9 |
| F. | Noteholder Lift Stay Motion and Motion to Value Debtor's Real Property | 10 |
| G. | Claims Process | 10 |
| | 1. Claims Bar Date and Proofs of Claim | 10 |
| | 2. Claims Objections and Claims Reconciliation | 10 |
| | 3. Preparation of Claims Estimates | 10 |
| H. | Management of the Debtor | 11 |
| IV. | THE PLAN OF REORGANIZATION | 11 |
| A. | Summary of Payments to Creditors and Interest Holders | 11 |
| | 1. Distributions | 11 |
| B. | Overview of the Requirements for a Plan Under the Bankruptcy Code | 12 |
| C. | Treatment of Unclassified Claims | 13 |
| D. | Treatment of Classified Claims | 14 |
| E. | Miscellaneous Provisions | 15 |
| | 1. Administrative Claims Bar Date | 15 |
| | 2. Professional Fee Claims; Substantial Contribution Claims | 15 |
| | 3. Payment of Statutory Fees | 16 |
| | 4. Amendment or Modification of the Plan | 16 |
| | 5. Severability of Plan Provisions | 16 |
| | 6. *Successors and Assigns* | 16 |
| | 7. *Plan Supplement* | 16 |
| | 8. *Revocation, Withdrawal or Non-Consummation* | 17 |
| | 9. Notice | 17 |

10. Governing Law .................................................................................................... 17

11. Term of Injunctions or Stay .............................................................................. 17

V.      CONFIRMATION REQUIREMENTS AND PROCEDURES ................................ 18

    A. Conditions to Confirmation ............................................................................... 18

    B. Conditions to Effective Date ............................................................................. 18

    C. Waiver of Conditions ........................................................................................ 18

    D.     Who May Vote or Object ................................................................... 19

    E.     Vote Required for Class Acceptance .................................................. 19

    F.     The Confirmation Hearing; Requirements for Confirmation ................ 19

        1.     Unfair Discrimination and Fair and Equitable Tests .................. 20

        2.     Best Interests Test .................................................................... 21

        3.     Feasibility ................................................................................ 21

    G.     Risks Associated with the Plan ......................................................... 22

VI.     EFFECT OF CONFIRMATION OF PLAN ......................................................... 22

    A. Binding Effect ................................................................................................... 22

    B. Releases ........................................................................................................... 22

    C. Discharge of Claims .......................................................................................... 23

    D. Exculpation and Limitation of Liability ............................................................ 23

    E. Injunction ......................................................................................................... 23

    F. Satisfaction of Subordination Rights ................................................................. 24

    G. Settlement Authority ......................................................................................... 24

    H.     Retention of Jurisdiction .................................................................. 24

VII.    FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .............................. 26

    A.     General ............................................................................................ 26

    B.     Federal Income Tax Consequences to the Debtor ............................... 27

　　　　　1.　　Regular Federal Income Tax.......................................................................27

　　C.　　Federal Income Tax Consequences to Holders of Claims .....................................27

　　D.　　Information Reporting and Backup Withholding ...................................................27

　　E.　　Importance of Obtaining Professional Tax Assistance ..........................................27

VIII.　CONCLUSION AND RECOMMENDATION..................................................................28

# I.    INTRODUCTION

The Debtor, Village at Camp Bowie I, L.P., submits this Second Amended Disclosure Statement (the "Disclosure Statement") pursuant to section 1125 of the Bankruptcy Code to Holders of Claims against and Interests in the Debtor in connection with (i) the solicitation of acceptances of the Second Amended Plan of Reorganization, dated May 3, 2011 (the "Plan"), and (ii) the hearing to consider confirmation of the Plan scheduled for May 19 2011, at 9:00 a.m. (the "Confirmation Hearing"). Unless otherwise defined herein, all capitalized terms contained herein have the meanings ascribed to them in the Plan.

### A.    Background

#### 1.    In General

The Debtor is the owner of a mixed use real estate development located in Fort Worth, Texas, on Camp Bowie Boulevard between Bryant Irvin Road and Ridglea Avenue, about 1/2 mile south of I-30 and known as the Village at Camp Bowie (the "Village"). The Village embodies several retail areas and office space including the Frost Bank Building at 6115 Camp Bowie, 6200 Camp Bowie, 6333 Camp Bowie, 6323 Camp Bowie, 3501 Bernie Anderson, 6201 Sunset Drive and certain unimproved property.

The Debtor's primary assets consist of the real property and structures comprising the Village and cash on hand as of the Petition Date of approximately $625,000. The Debtor's main liabilities include approximately $31M in principal plus accrued interest and other charges arising under two secured notes and approximately $60,000 in general trade accounts payable.

#### 2.    Events Leading to Chapter 11 Filing

On January 22, 2004, Debtor, as Borrower, executed a Construction Loan Agreement (the "Construction Loan") for the aggregate maximum principal amount of $36,535,000.00 with SouthTrust Bank ("SouthTrust") and Texas Capital Bank, National Association ("TCB") to acquire and renovate the Village. The Construction Loan was financed by a Promissory Note in the original maximum principal amount of $26,535,000.00 payable to the order of SouthTrust (the "SouthTrust Note") and a second Promissory Note in the original maximum principal amount of $10,000,000.00 payable to TCB (the "TCB Note") (collectively the SouthTrust Note and the TCB Note are the "Notes").

At the time the Debtor acquired the Village, the Debtor's partners invested $9 million in equity capital in the Debtor. Additionally, since the acquisition, the Partners have invested an additional $1.1 million in retained earnings into the Debtor's capital structure. No dividends or distributions have ever been paid to the Partners.

Wachovia Bank, National Association ("Wachovia") became the successor by merger with SouthTrust to the SouthTrust Note and the successor by assignment from TCB to the TCB Note. Subsequently, Wells Fargo Bank, National Association ("Wells

Fargo") became the successor in interest to the Notes by merger with Wachovia. In turn, Wells Fargo conveyed its interest in the Notes to Western Real Estate Equities, LLC ("Western" or "Noteholder") in July, 2010.

The Notes, as modified, matured on February 11, 2010. Prior to maturity, the Notes were never in default. As of the date of maturity, the principal amount owed by the Debtor on the Notes was $31,292,824. The Debtor attempted to negotiate with the predecessors of the Noteholder and the Noteholder potential solutions to refinance the current indebtedness, but those negotiations were unsuccessful. Noteholder posted the Village for a foreclosure sale to be held on August 3, 2010.

Believing that the Village has significant value and appeal to investors and lenders as a going concern the Debtor determined that its most prudent course of action was to initiate this Chapter 11 proceeding with the intent to reorganize its debts and pay its creditors. Accordingly, on August 2, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District Of Texas, Fort Worth Division (the "Court"), Case No. 10-45097 (the "Chapter 11 Case"). The Debtor continues to operate its business and manage its affairs as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the title 11, United States Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

B.  Purpose of this Document

The Bankruptcy Code requires that the party or parties proposing a chapter 11 plan prepare and file with the Court a document called a "disclosure statement." THE DOCUMENT YOU ARE READING IS THAT DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") FOR THE PLAN. THIS DISCLOSURE STATEMENT INCLUDES ALL OF THE EXHIBITS TO THIS DISCLOSURE STATEMENT WHICH ARE INCORPORATED INTO THIS DISCLOSURE STATEMENT.

This Disclosure Statement summarizes the contents of the Plan and describes certain information relating to the Plan and the process the Court follows in determining whether to confirm the Plan. This Disclosure Statement describes the Debtor, its assets, liabilities, and financial performance, and contains a summary and analysis of the Plan.

On May 4, 2011, after notice and a hearing, the Court signed the Disclosure Statement Order, a copy of which is attached hereto as **Exhibit 1**, approving this Disclosure Statement as containing adequate information of a kind and in sufficient detail to make an informed judgment whether to accept or reject the Plan. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

All Holders of Claims and Interests should review this Disclosure Statement and the Plan before voting to accept or reject the Plan. If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

823128v4

READ THIS DISCLOSURE STATEMENT CAREFULLY TO LEARN:

(1)     WHO CAN VOTE ON OR OBJECT TO THE PLAN;

(2)     WHAT THE TREATMENT OF YOUR CLAIM OR INTEREST IS (i.e., what your claim or interest will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM OR INTEREST WOULD RECEIVE IN A CHAPTER 7 LIQUIDATION;

(3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;

(4)     WHAT THE COURT WILL LOOK AT TO DECIDE WHETHER TO CONFIRM THE PLAN;

(5)     THE EFFECT OF CONFIRMATION; AND

(6)     WHETHER THE PLAN IS FEASIBLE.

THE DISCLOSURE STATEMENT CANNOT ADVISE YOU ABOUT YOUR RIGHTS.  YOU SHOULD CONSULT YOUR OWN ATTORNEY TO OBTAIN MORE SPECIFIC ADVICE ON HOW THE PLAN WILL AFFECT YOU AND YOUR BEST COURSE OF ACTION.

THE COURT HAS NOT YET CONFIRMED THE PLAN.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

C.      Holders of Claims or Interests Allowed to Vote

Pursuant to the provisions of the Bankruptcy Code, only Holders of Allowed Claims or Equity Interests in Classes of Claims or Interests that are impaired and that are in a Class that will receive a distribution under the Plan are entitled to vote to accept or reject a proposed chapter 11 plan. Classes of Claims or Equity Interests in which the Holders of Claims or Equity Interests are unimpaired under a chapter 11 plan are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.  Classes of Claims or Interests that receive no distribution on account of their Claims or Interests are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.  A listing of the Classes that are entitled to vote is contained in Section V.A of this Disclosure Statement.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of the plan. Acceptance of a plan by a class of interests requires acceptance by at least two-thirds of the number of shares in such class that cast ballots for acceptance or rejection of the plan.

823128v4

Section 1129(b) of the Bankruptcy Code permits the confirmation of a plan notwithstanding the non-acceptance of a plan by one or more impaired classes of claims or interests. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class.

D.     Deadlines for Voting On and Objecting to The Plan; Date of Plan Confirmation Hearing

        1.     Time and Place of the Confirmation Hearing. The hearing at which the Court will determine whether or not to confirm the Plan will take place on May 19, 2011, at 9:00 a.m. in the Courtroom of the Honorable Dennis Michael Lynn, United States Bankruptcy Judge for the Northern District of Texas, Fort Worth Division. The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

        2.     Deadline for Voting For or Against the Plan. If you are entitled to vote, it is in your best interest to vote timely on the enclosed ballot (the "Ballot") and return the Ballot in the enclosed envelope to:

                MCGUIRE, CRADDOCK & STROTHER, P.C.
                2501 N. Harwood
                Suite 1800
                Dallas, Texas 75201
                Attn: Julia M. Appleton

        Your ballot must be received by 5:00 p.m., prevailing Central Time, on May 17, 2011, or it will not be counted. If you are a Holder of a Claim or Interest entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot or if you have any questions concerning the procedure for voting on the Plan, please contact Julia M. Appleton, McGuire, Craddock & Strother, P.C., 2501 N. Harwood, Suite 1800, Dallas, Texas 75201, ((214) 954-6813).

        If you hold Claims in more than one Class entitled to vote on the Plan, you will receive separate Ballots that must be used for each separate Class of Claims.

        3.     Deadline for Objecting to Confirmation of the Plan. Objections to the confirmation of the Plan must be filed with the Court and delivered to (a) Counsel for the Debtor, J. Mark Chevallier and David L. Woods, McGuire, Craddock & Strother, P.C., 2501 N. Harwood, Suite 1800, Dallas, Texas 75201 on or before May 17, 2011 at 5:00 p.m. (CST).

        4.     Administrative Claims Bar Date. As set forth in the Confirmation Hearing Notice, all applications for allowance or payment of Administrative Claims against the Debtor, except applications for compensation of professionals retained pursuant to sections 327 or 1103 of the Bankruptcy Code for services rendered and for reimbursement of expenses incurred on or after the Petition Date and on or before the date of the Confirmation Hearing, including for substantial contribution under section 503(b)(3)(D) of the Bankruptcy Code, shall be filed not

later than ten (10) days after the Effective Date.  ANY SUCH CLAIM NOT FILED WITHIN THIS DEADLINE SHALL BE FOREVER BARRED.

        5.      <u>Identity of Persons to Contact for More Information Regarding the Plan</u>. Any Person desiring further information about the Plan should contact Debtor's counsel:  J. Mark Chevallier or David L. Woods, McGuire, Craddock & Strother, P.C., 2501 N. Harwood, Suite 1800, Dallas, Texas 75201; Telephone (214) 954-6800; Telecopy (214) 954-6850.

     E.     <u>Disclaimer</u>.

        NOTHING CONTAINED IN THIS DISCLOSURE STATEMENT IS OR SHALL BE DEEMED TO BE AN ADMISSION OR STATEMENT AGAINST INTEREST BY THE DEBTOR FOR PURPOSES OF ANY PENDING OR FUTURE MATTER OR PROCEEDING.

        ALTHOUGH THE ATTORNEYS AND OTHER PROFESSIONALS EMPLOYED BY THE DEBTOR HAVE ASSISTED IN THE PREPARATION OF THIS DISCLOSURE STATEMENT BASED UPON FACTUAL INFORMATION AND ASSUMPTIONS PROVIDED BY THE DEBTOR AND OTHERS, THEY HAVE NOT INDEPENDENTLY VERIFIED SUCH INFORMATION AND MAKE NO REPRESENTATIONS AS TO THE ACCURACY THEREOF.  THE ATTORNEYS AND OTHER PROFESSIONALS EMPLOYED BY THE DEBTOR SHALL HAVE NO LIABILITY FOR THE INFORMATION IN THE DISCLOSURE STATEMENT.

        THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  PERSONS HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.  THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

        THE DEBTOR HAS NOT AUTHORIZED ANY PERSON TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT AND ANY ACCOMPANYING RECOMMENDATION LETTER, REGARDING THE PLAN OR THE SOLICITATION OF ITS ACCEPTANCE.

        The financial data relied upon in formulating the Plan is based entirely on the Debtor's books and records.  The liquidation analysis, estimates, and other financial information referenced in this Disclosure Statement and attached hereto as Exhibits have been developed with the assistance of the professional advisors employed by the Debtor.  Although these professional advisors assisted in the preparation of this Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial, business and

accounting data provided by the Debtor and third parties, much of which information has not been audited. *The professional advisors of the Debtor have not independently verified such information and, accordingly, make no representations or warranties as to its accuracy.* Moreover, although reasonable efforts have been made to provide accurate information, the Debtor cannot warrant or represent that the information in this Disclosure Statement, including any and all financial information, is without inaccuracy or omissions, or that actual values or distributions will comport with the estimates set forth herein. No entity may rely upon the Plan or the Disclosure Statement or any of the accompanying Exhibits for any purpose other than to determine whether to vote in favor of or against the Plan. The Debtor represents that everything stated in this Disclosure Statement is true to the best of its knowledge.

The discussion in this Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate," or "continue," or the negative thereof, or other variations thereon or comparable terminology. The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements. The liquidation analysis, distribution projections, and other information are estimates only, and the timing and amount of actual distributions to Holders of Claims or Interests may be affected by many factors that cannot be predicted.

F. <u>Plan Overview</u>.

THE FOLLOWING IS A SUMMARY OF CERTAIN INFORMATION CONTAINED ELSEWHERE IN THIS DISCLOSURE STATEMENT. REFERENCE IS MADE TO, AND THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY, THE MORE DETAILED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND IN THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS SUMMARY AND THE PLAN, THE PLAN WILL CONTROL. FOR A MORE DETAILED SUMMARY OF THE PLAN, SEE ARTICLE IV OF THIS DISCLOSURE STATEMENT.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE DECIDING WHETHER TO OBJECT TO CONFIRMATION OF THE PLAN AND WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. ALL SUMMARIES CONTAINED IN AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO SUCH DOCUMENTS, OTHER EXHIBITS HERETO, AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE COURT. THIS DISCLOSURE STATEMENT WILL NOT BE UPDATED AFTER COURT APPROVAL AND, SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN ARE MATERIALLY ACCURATE; OR (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

823128v4

1.     Plan Summary.  The Debtor's Plan is a Chapter 11 Plan of Reorganization. Under the Plan, the Reorganized Debtor will continue in business in a form and manner substantially similar to Debtor's pre-petition business practices.

This Plan contemplates that the Debtor will pay its creditors 100% of the Allowed Amount of their Claims.  Funds for such payments shall come from cash on hand plus $1,000,000 from the Preferred Equity to be issued to participating Interest Holders of the Debtor or other third party investors and from future revenue of the Reorganized Debtor.

The Allowed Secured Claim of Western will be paid through a combination of cash and issuance of the New Western Note which shall have a 5 year term, bear interest at a rate of 5.83% per annum, with interest only payments for the first 36 months following the Effective Date, principal and interest payments based on a 30 year amortization for months 37 - 59 with the remaining principal balance and all accrued and unpaid interest due at maturity in month 60. The Claims of General Unsecured Creditors shall be paid in full, without interest through three monthly payments beginning on the Effective Date.  Existing Equity Interest Holders shall be subordinated to the Preferred Equity, but will otherwise retain their interests in the Debtor under the Plan provided they participate in their pro-rata share of the Preferred Equity. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Secured Tax Claims are not classified.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Confirmation Date.

## II.     BACKGROUND

A.     Description of the Debtor and the Debtor's Business.

1.     History and General Overview.

As set forth earlier, on January 22, 2004, Debtor, as Borrower, executed a Construction Loan Agreement (the "Construction Loan") for the aggregate maximum principal amount of $36,535,000.00 with SouthTrust Bank ("SouthTrust") and Texas Capital Bank, National Association ("TCB") to acquire and renovate the Village.  The Construction Loan was financed by a Promissory Note in the original maximum principal amount of $26,535,000.00 payable to the order of SouthTrust (the "SouthTrust Note") and a second Promissory Note in the original maximum principal amount of $10,000,000.00 payable to TCB (the "TCB Note") (collectively the SouthTrust Note and the TCB Note are the "Notes").

At the time the Debtor acquired the Village, the Partners invested $9 million in equity capital in the Debtor.  Additionally, since the acquisition, the Partners have invested an additional $1.1 million in retained earnings into the Debtor's capital structure.  No dividends or distributions have ever been paid to the Partners.

The Notes are secured by a first priority, properly perfected Deed of Trust lien on and security interest in the land, personal property and fixtures located at the Village, an Assignment of Rents and Leases, and an Assignment of Contracts, Plans and Permits, each of which are dated January 22, 2004.

Wachovia Bank, National Association ("Wachovia") became the successor by merger with SouthTrust to the SouthTrust Note and the successor by assignment from TCB to the TCB Note. Subsequently, Wells Fargo Bank, National Association ("Wells Fargo") became the successor in interest to the Notes by merger with Wachovia. In turn, Wells Fargo conveyed its interest in the Notes to Western Real Estate Equities, LLC ("Western" or "Noteholder") in July, 2010.

The Notes, as modified, matured on February 11, 2010. Prior to maturity, the Notes were never in default. As of the date of maturity, the principal amount owed by the Debtor on the Notes was $31,292,824. The Debtor has attempted to negotiate with the predecessors of the Noteholder and the Noteholder potential solutions to refinance the current indebtedness, but those negotiations are now exhausted.

Noteholder accelerated the debt due under the Notes and posted the Village for foreclosure sale to be held on August 3, 2010.

Unfortunately, despite the Debtor's best efforts, it has not been able to secure alternate financing to the current arrangement and does not have sufficient capital to pay the entire indebtedness. Just as the Debtor completed the extensive updating, renovations and remodeling to the Village, the downturn in the U.S. economy and the associated credit crisis accelerated and traditional commercial real estate financing became difficult for the Debtor to obtain.

Since the Debtor acquired the Village the Debtor has cash flowed the property each month, making the Village an appealing investment to potential purchasers or commercial lenders.

Believing that the Village has significant value and appeal to investors and lenders as a going concern the Debtor determined that its most prudent course of action was to initiate this Chapter 11 proceeding with the intent to reorganize its debts and pay its creditors. Accordingly, on August 2, 2010, the Debtor filed this case.

2.     <u>Ownership</u>.  VCBGP I, LLC, a Texas limited liability company.  VCBGP I, LLC, is the general partner ("GP") of the Debtor.  There are eleven (11) limited partners of the Debtor.  The partnership interests in Debtor are specifically listed in Section 21 of the Debtor's Statement of Financial Affairs filed August 27, 2010 [Docket No. 47].

3.     <u>Management</u>.  Woodrow R. Brownlee is the Managing Member of the GP. Woodrow R. Brownlee is also a .0049% limited partner of the Debtor.  Trophy Investment Realty, LLC, an affiliate of the GP is the asset manager for the Debtor and is currently paid $12,000 monthly for such services.  The GP does not receive any compensation from the Debtor.

B. _Financial Overview_. The Debtor's primary assets consist of the real property and structures comprising the Village and projected cash on hand as of the Effective Date of approximately $812,500.00.

C. _Significant Funded Indebtedness_. The Debtor's main liabilities are: $31,292,824.00 in principal plus accrued interest and other charges arising under the Notes now held by Noteholder and approximately $60,000 in general trade accounts payable.

III. SIGNIFICANT EVENTS DURING THE DEBTOR'S CHAPTER 11 CASE

The Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on August 2, 2010 (the "Petition Date"). At that point, all actions and proceedings against the Debtor and all acts to obtain property from the Debtor were stayed under section 362 of the Bankruptcy Code. The Debtor continues to operate its businesses and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the bankruptcy case.

A. _First-Day Orders_. Shortly after the Petition Date, several orders were entered, as is typical in medium to large chapter 11 cases, including authorization of: (i) employment of certain leasing brokers in the ordinary course and (ii) an interim order authorizing the use of cash collateral and granting adequate protection.

B. _Advisors to the Debtor_. The Debtor retained McGuire Craddock & Strother, P.C. as its bankruptcy counsel, and Alan Pursley to appraise the Village. The Debtor has also employed other professionals, including Smith, Stern, Friedman & Nelms, P.C. as eviction counsel, Holt Lunsford Company and Venture Commercial Real Estate as Debtor's leasing brokers, and BJ Financial Services and Houseman Seeligson as Debtor's accountants.

C. _Significant Court Orders_. Although the Debtor is authorized to operate its business as debtor-in-possession, it may not engage in transactions outside the ordinary course of business without approval of the Court after notice and opportunity for a hearing as provided for in the Code and Bankruptcy Rules. On and after the Petition Date, the Debtor sought and obtained from the Court certain orders that are of particular importance in the operation of the Debtor's businesses during the pendency of the Chapter 11 Case, including orders:

- authorizing the use of cash collateral;

- authorizing the employment and compensation of professionals utilized by the Debtor in the ordinary course of business.

D. _Creditor-Related Activities_. On August 11, 2010, the Debtor mailed a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines and Proof of Claim Form to all known and potential creditors of the Debtor.

E. _Filing of Schedules and Statements of Financial Affairs_. On August 27, 2010, the Debtor filed Schedules and Statements of Financial Affairs with the Court, describing the Debtor's assets, liabilities, and unexpired leases and executory contracts.

823128v4

F.    Noteholder Lift Stay Motion and Motion to Value Debtor's Real Property.    On August 10, 2010, the Noteholder filed its Motion for Relief from Stay and for Adequate Protection.    On August 30, 2010, Noteholder filed its Motion for Valuation seeking an order of the Court valuing the Debtor's real property.    These two motions were vigorously contested by the Debtor and the Noteholder.    The hearing on these motions concluded on March 3, 2011, at which time the Court indicated it would deny the lift stay motion and that there was equity in the Debtor's real property.    The Court has not yet issued its formal ruling on the two motions.

G.    Claims Process.

1.    Claims Bar Date and Proofs of Claim.    On August 4, 2010, the Court established the general deadline for filing proofs of claim against the Debtor (the "Bar Date") as December 2, 2010 for prepetition claims not listed on the Debtor's Schedules or that were listed as contingent, unliquidated, or disputed.    The Debtor estimates the total of Unsecured Claims, including lease and executory contract rejection claims, will be approximately $70,000.00.    This estimate takes into account claims listed as contingent, unliquidated, or disputed, but each creditor with such a claim must file a proof of claim in order to receive any distribution under the Plan.

2.    Claims Objections and Claims Resolution.    The Debtor is in the process of preparing objections to certain Claims.    Depending on the outcome of these objections, the actual ultimate aggregate amount of Allowed Claims may differ from the above estimate.

3.    Preparation of Claims Estimates.    The Debtor has engaged in reviewing and analyzing the Claims asserted in this case.    As a result of these efforts, substantial progress has been made in (a) reconciling the amount and classification of outstanding Claims and (b) asserting and prosecuting objections to Claims.    In addition, the Debtor has, among other things, (i) identified Claims or categories of Claims for future resolution and (ii) identified existing or potential Claims disputes.

Through these various activities, the Debtor has developed estimates of Allowed Claims in each Class established under the Plan.    The Debtor has prepared these estimates based primarily on the following: (a) the outcome of Claim reconciliations and Claim objections to date, (b) projections based on anticipated future Claim reconciliations and Claim objections, (c) the comparison of asserted Claims against the Debtor's books and records, (d) the Debtor's experience in reconciling Claims prior to and following the commencement of the Chapter 11 Case, (e) the historical experience of the Debtor's professionals in other chapter 11 cases, (f) an analysis of the litigation risks associated with Disputed Claims, and (g) other legal and factual analyses unique to particular types of Claims.

The Debtor's estimate of Allowed Claims is identified later in this Disclosure Statement and form the basis of projected recoveries for each Class.    Notwithstanding the Debtor's substantial efforts in developing its Claims estimates, the preparation of such estimates is inherently uncertain, and accordingly there is no assurance that such estimates will accurately predict the actual amount of Allowed Claims in this case.    As a result, the actual amount of Allowed Claims may differ significantly from the Debtor's claims estimates contained herein.

H.     Current Management of the Debtor.     The Debtor's current management is comprised of Woodrow R. Brownlee, the manager of GP, the general partner of the Debtor. The Debtor anticipates that Mr. Brownlee will continue to act in this role until and after the Effective Date. The Debtor employs Trophy Investment Realty, LLC ("TIR") as its asset manager. TIR is an affiliate of the GP and is owned by David Burgher and Woodrow Brownlee.

IV.     THE PLAN OF REORGANIZATION

THE DISCUSSION OF THE PLAN SET FORTH BELOW IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN AND THE OTHER EXHIBITS AND SCHEDULES TO THIS DISCLOSURE STATEMENT, THE TERMS OF WHICH ARE CONTROLLING. HOLDERS OF CLAIMS OR INTERESTS AND OTHER INTERESTED PARTIES ARE URGED TO READ THE PLAN AND THE EXHIBITS AND SCHEDULES TO THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY SO THAT THEY MAY MAKE AN INFORMED JUDGMENT CONFIRMING THE PLAN.

A.     Summary of Payments to Creditors and Interest Holders.

1.     Distributions.     The chart below sets forth the estimated distributions to holders of Claims and Interests in the event that the Plan becomes effective:

| Class | Description of Class | Impaired | Treatment of Claims | Proponent's Estimate of Maximum Amount of Allowed Claims and Estimated Percentage Recovery |
|---|---|---|---|---|
| Class 1 | Secured Claim of Western, the owner and holder of the Promissory Note in the original maximum principal amount of $26,535,000.00 payable to the order of SouthTrust (the "SouthTrust Note") and a second Promissory Note in the original maximum principal amount of $10,000,000.00 payable to TCB (the "TCB Note") (collectively the SouthTrust Note and the TCB Note are the "Notes"). | Yes | The Allowed Secured Claim of the Noteholder is estimated to be $32,880,905 which includes principal of $31,292,824, accrued but unpaid pre-petition interest of $659,186, an exit fee equal to 1% of the principal balance or $312,928, accrued but unpaid post-petition interest of $485,967 and allowed attorney fees and expenses of Western. Western will be paid in cash on the Effective Date post-petition interest and allowed fees and expenses. The balance of the Western Allowed Secured Claim in the amount of $32,264,938 will be paid through the issuance of the New Western Note. | $32,880,905<br><br>100% |

| Class 2 | General Unsecured Claims | Yes | Holders of General Unsecured Claims will be paid 100% of the allowed amount of their claims, without interest, in three (3) equal monthly installments commencing on the Effective Date. | $60,000.00 100% |
|---------|--------------------------|-----|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----------------|
| Class 3 | Equity Interests | Yes | Holders of Equity Interests which participate in and fund at least their pro rata share of the Preferred Equity shall retain their existing partnership interests in the Reorganized Debtor, subject to subordination to the Preferred Equity which will be used to fund the Plan. Any Holder of an Equity Interest that does not subscribe for and fund the Preferred Equity in an amount at least equal to their pro rata share of the existing Partnership Interests in the Debtor shall forfeit their existing Equity Interest and such Equity Interest shall be cancelled and terminated as of the Effective Date of the Plan. | N/A |

B. <u>Overview of the Requirements for a Plan Under the Bankruptcy Code</u>. Section 1123 of the Bankruptcy Code provides that a plan of reorganization shall designate classes of a debtor's claims and interests. A plan divides the claims and interests into classes and sets forth the treatment offered each class. Section 101(5) of the Bankruptcy Code defines "claim" as:

> [any] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

Section 1122 of the Bankruptcy Code requires that each class of claims and interests contain only claims and interests which are substantially similar to each other. The Debtor believes that they have classified all Claims and Interests in compliance with the provisions of

Section 1122. The Classes in the Plan take into account the differing nature and, with respect to certain categories of Classes, priority under the Bankruptcy Code of the various Claims and Interests. It is possible, although not likely, however, that the Court may find that a different classification is required for the Plan to be confirmed. In such event, it is the present intent of the Debtor, to the extent permitted by the Court and applicable law, to modify the classifications in the Plan as required by the Court and to use any acceptances received for the purpose of obtaining approval of the Class or Classes of which the accepting holder is a member.

C.  <u>Treatment of Unclassified Claims</u>. The Bankruptcy Code provides that certain types of claims need not be classified as part of a plan. The proposed treatment of such unclassified claims under the Plan is as follows:

1.  *Administrative Claims*

(a)  <u>Allowed Administrative Claims</u>. Except to the extent that the Holder of a particular Administrative Claim has agreed to different treatment, each Holder of an Allowed Administrative Claim shall be paid in cash, in full, as soon as practicable after the later of: (a) the Effective Date, (b) the date the Claim becomes an Allowed Claim, or (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor's businesses, the date the payment is due in the ordinary course of business. Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code, other than by the Debtor's Professionals must be filed on or before the Administrative Claims Bar Date or the holder of such Claim shall be forever barred from asserting such Claim or receiving any payment on account of such Claim.

(b)  <u>Administrative Claims of Professionals</u>.

(i)  <u>Deadline to File Professional Administrative Claims</u>. All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of Sections 327, 328, 330, 331, 503(b), and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, *inter alia*, any compensation requested by an professional or any other Person for making a substantial contribution in the Bankruptcy Cases) shall file and serve on the Debtor, counsel for the Debtor and the U.S. Trustee an application for final allowance of compensation and reimbursement of expenses no later than (i) forty-five (45) days after the Effective Date, or (ii) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period.

(ii)  <u>Objections to Professional Administrative Claims</u>. Objections to applications of Professionals or other Persons for compensation or reimbursement of expenses must be filed with the Bankruptcy Court and served on the Debtor, counsel for the Debtor and the U.S. Trustee and the professionals to whose application the objections are addressed on or before (i) twenty (20) days after such application is filed and served or (ii) such later date as the Bankruptcy Court shall order upon motion made

prior to the end of such 20-day period or upon agreement by the affected Professional.

###### 2. *Secured Tax Claims*

(a)      Allowed Secured Claims of the Tax Authorities (those governmental entities which hold liens against real or personal property of the Debtor to secure taxes owed by the Debtor for 2010 and subsequent tax years) shall be paid in the ordinary course of business without the need for any secured taxing entity to file a claim or request for payment with the bankruptcy court.

(b)      Notwithstanding anything in the Plan, and Exhibits or Supplements thereto, or the Confirmation Order, the Tax Authorities shall retain their respective tax liens against the applicable property or properties until all taxes are paid in full.

#### D.      Treatment of Classified Claims.

###### 1. *Class 1: Secured Claim of Western*

Class 1 is impaired.   The Allowed Secured Claim of Western as determined by the Court will be paid as follows:

(a)      All accrued but unpaid post-petition interest and any fees or costs allowed by the Court under Section 506(b) of the Bankruptcy Code shall be paid in full in cash on the Effective Date;

(b)      The remaining portion of the Allowed Secured Claim of Western shall be paid through the issuance of the New Western Note on the Effective Date;

(c)      The New Western Note shall be secured by the same property which was valued in determining Western's Allowed Secured Claim; and

(d)      The Reorganized Debtor shall file as part of the Plan Supplement the form of the New Western Note, Deed of Trust, Security Agreement and Fixture Filing and an Assignment of Rents and Leases in favor of Western.

###### 2. *Class 2: General Unsecured Claims*

Class 2 is impaired.   Holders of General Unsecured Claims will be paid 100% of the allowed amount of their claims, without interest, in three (3) equal monthly installments commencing on the Effective Date.

###### 3. *Class 3: Equity Interest Holders*

Class 3 is impaired.   Holders of Equity Interests which participate in and fund at least their pro rata share of the  Preferred Equity shall retain their existing partnership interests in the Reorganized Debtor, subject to subordination to the Preferred Equity which will

be used to fund the Plan. Any Holder of an Equity Interest that does not subscribe for and fund the Preferred Equity in an amount at least equal to their pro rata share of the existing Partnership Interests in the Debtor shall forfeit their existing Equity Interest and such Equity Interest shall be cancelled and terminated as of the Effective Date of the Plan. To the extent any existing Holder of an Equity Interest which subscribes to the Preferred Equity or any new third party investor funds some or all of the pro rata share of the Preferred Equity allocable to an Equity Interest Holder which elects not to subscribe to its pro rata share of the Preferred Equity, such subscribing Interest Holder(s) or new investor will be issued a proportionate share of new equity interests in the Reorganized Debtor which new interests shall equal the proportionate share of Equity Interests previously owned by the non subscribing Equity Interest Holder. Holders of Equity Interests and/or Preferred Equity in the Reorganized Debtor shall not receive any distribution or return of capital on account of such Equity Interest or Preferred Equity, other than a quarterly yield of 12% payable on the Preferred Equity, until such time as the New Western Note is paid in full.

Except as otherwise provided in the Plan, nothing shall affect the rights, claims or defenses, whether legal or equitable, of the Debtor with respect to legal and equitable defenses to setoff, recoupment, or other such claims or defenses against any Claims or Interests.

E.      Miscellaneous Provisions.

1.      *Administrative Claims Bar Date*

The Confirmation Order will establish an Administrative Claims Bar Date for filing Administrative Claims, which date shall be ten (10) days after the Effective Date. Holders of asserted Administrative Claims, except for Professional Fee Claims, not paid prior to the Effective Date shall submit requests for payment of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. The notice of the Effective Date to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth such date and constitute notice of this Administrative Claims Bar Date. The Debtor or Reorganized Debtor in administering the Plan, as the case may be, shall have ninety (90) days (or such longer period as may be allowed by order of the Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims.

2.      *Professional Fee Claims; Substantial Contribution Claims*

All Persons requesting compensation or reimbursement of Professional Fee Claims pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the Debtor prior to the Effective Date (including requests under section 503(b)(4) of the Bankruptcy Code by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file and serve on Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than ninety (90) days after the Confirmation Date, unless otherwise ordered by the Court (the "Professional Fee Bar Date"). Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on Reorganized Debtor and the requesting Professional or other entity in accordance with the local rules of the Court.

### 3.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, shall be paid on the Effective Date.  Any other fees pursuant to this section which the Court shall determine after the Effective Date shall be paid as soon as reasonably practicable following the Court's determination.  Following the Effective Date, except for fees to be paid pursuant to this section relating to disbursements, neither the Debtor nor its Estate shall thereafter be liable for the payment of any additional fees under 28 U.S.C. § 1930.

### 4.    *Amendment or Modification of the Plan*

The Debtor may alter, amend, or modify the Plan or any Plan Exhibits under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing.  After the Confirmation Date and prior to substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan.

### 5.    *Severability of Plan Provisions*

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Court to be invalid, void or unenforceable, the Court, at the request of Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 6.    *Successors and Assigns*

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

### 7.    *Plan Supplement*

Any and all exhibits, lists or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court no later than ten (10) days prior to the deadline, as the Court shall set, for filing objections to this Plan.  Upon its filing, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours.  Claimholders and Interestholders may obtain a copy of the Plan Supplement upon written request to the Debtor in accordance with Article XII.H

of the Plan. The Debtor explicitly reserves the right to modify or make additions to or subtractions from any schedule to the Plan and to modify any exhibit to the Plan prior to the Confirmation Hearing.

8.    *Revocation, Withdrawal or Non-Consummation*

The Debtor reserves the right, to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan or if Confirmation or Consummation does not occur, then, (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor or any other Person, (b) prejudice in any manner the rights of such Debtor or any other Person, or (c) constitute an admission of any sort by the Debtor or any other Person.

9.    *Notice*

Any notice required or permitted to be provided to the Debtor under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

*If to the Debtor*:

MCGUIRE, CRADDOCK & STROTHER, P.C.
2501 N. Harwood
Suite 1800
Dallas, Texas  75201
Attn: J. Mark Chevallier, Esq.

10.    *Governing Law*

Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a Plan Exhibit provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflicts of law of such jurisdiction.

11.    *Term of Injunctions or Stay*

With respect to the Debtor and Reorganized Debtor, all injunctions or stays provided for in the Chapter 11 Case under section 105, 362 or 524 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall be permanent.

## V.     CONFIRMATION REQUIREMENTS AND PROCEDURES

A.     Conditions to Confirmation

The following are conditions precedent to the occurrence of the Confirmation Date:

1.     the entry of an order finding that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and

2.     the proposed Confirmation Order shall be in a form and substance reasonably acceptable to the Debtor.

B.     Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article XI.C of this Plan:

1.     The Confirmation Order shall have been entered and become enforceable pursuant to Bankruptcy Rule 7052 and not the subject of a stay under Bankruptcy Rule 7062 and shall authorize and direct the Debtor to take all actions necessary or appropriate to enter into, implement, and consummate the instruments, releases, and other agreements or documents created in connection with the Plan.

2.     All Plan Exhibits shall be in form and substance reasonably acceptable to the Debtor and shall have been executed and delivered.

3.     All actions, documents and agreements necessary to implement the Plan shall have been effectuated or executed, including, without limitation, that the Preferred Equity to be issued under the Plan shall be fully subscribed and funded.

C.     Waiver of Conditions

Each of the conditions set forth in Articles IX.A and IX.B of the Plan may be waived in whole or in part by the Debtor, without any other notice to parties in interest or the Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation or the Effective Date may be asserted by the Debtor or Reorganized Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor or Reorganized Debtor).  The failure of the Debtor or Reorganized Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

The Bankruptcy Court may confirm the Plan only if it determines that the Plan complies with the technical requirements of chapter 11, including, among other things, that (a) the Plan has properly classified Claims and Interests, (b) the Plan complies with applicable provisions of

the Bankruptcy Code, (c) the Debtor has complied with applicable provisions of the Bankruptcy Code, (d) the Debtor has proposed the Plan in good faith and not by any means forbidden by law, (e) disclosure of "adequate information" as required by Section 1125 of the Bankruptcy Code has been made, (f) the Plan has been accepted by the requisite votes of all classes of creditors (except to the extent that "cramdown" is available under Section 1129(b) of the Bankruptcy Code), (g) the Plan is in the "best interests" of all holders of Claims or Interests in an Impaired Class, and (h) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of such fees on the Consummation Date.

      D.    <u>Who May Vote or Object</u>.  In accordance with Sections 1126 and 1129 of the Bankruptcy Code, the Claims and Interests in Classes 1, 3 and 4 of the Plan are impaired, and the holders of Claims and Interests in these Classes as of the date of the entry of the Order approving the Disclosure Statement (the "Voting Record Date") are entitled to vote to accept or reject the Plan.

      E.    <u>Vote Required for Class Acceptance</u>.  As to the classes of claims and interests entitled to vote on a plan, the Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in amount, and more than one-half in number, of the claims of that class that actually cast ballots for acceptance or rejection of the plan determined without including any acceptance of the plan by an insider.  The Bankruptcy Code defines acceptance of a plan by a class of interests as acceptance by holders of at least two-thirds in amount of the allowed interests held by holders of such interests that actually cast ballots for acceptance or rejection of the plan.  The Bankruptcy Code does not require that each claim or interest holder vote in favor of a plan of reorganization in order for the Court to confirm the plan. At a minimum, however, the plan must be accepted by the required number of holders of claims and interests in a class actually voting.

      HOLDERS OF CLAIMS OR INTERESTS WHO FAIL TO VOTE WILL NOT BE COUNTED AS EITHER ACCEPTING OR REJECTING THE PLAN.  TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN 5:00 P.M. (CST), ON MAY 17, 2011.

      F.    <u>The Confirmation Hearing; Requirements for Confirmation</u>.  The Bankruptcy Code requires the Court, after notice, to hold a Confirmation Hearing.  The Confirmation Hearing in respect of the Plan has been scheduled for May 19, 2011, at 9:00 a.m. before the Honorable Dennis Michael Lynn, United States Bankruptcy Judge for the Northern District of Texas, Fort Worth Division, in Room 128, U. S. Courthouse, 501 W. Tenth Street, Fort Worth, Texas 76102.  The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.  Any party in interest may object to confirmation.  Any objection to confirmation must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim against or the Interest in the Debtor held by the objector.  Any such objection must be filed with the Court and served so that it is received by the Clerk of the Court at 501 W. Tenth Street, Fort Worth, Texas 76102 and the following persons on or before May 17, 2011, at 5:00 p.m., prevailing Central time:

McGuire, Craddock & Strother, P.C.
2501 N. Harwood
Suite 1800
Dallas, Texas 75201
Attn:   J. Mark Chevallier, Esq.

United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
Attn:   Erin Schmidt, Esq.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Even if all classes of claims and interests were to accept a plan, the Court must make certain findings set forth in section 1129 of the Bankruptcy Code before confirming a plan.  At the Confirmation Hearing, the Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that the plan is (a) accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (b) feasible and (c) in the "best interests" of creditors and stockholders that are impaired under the plan.  Section 1129 of the Bankruptcy Code requires, among other things, that a plan be in the "best interests" of creditors, which generally requires that the value of the consideration to be distributed to the creditors under a plan may not be less than creditors would receive if the debtor were liquidated under a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code.  A plan must also be "feasible," which requires there is a reasonable probability that the debtor will be able to perform the obligations imposed by the plan, and that the debtor will be able to continue operations without the need for further financial reorganization.  Section 1129 of the Bankruptcy Code additionally requires, among other things, that a plan comply with the applicable provisions of the Bankruptcy Code and other applicable law, that the Plan be proposed in good faith, and that at least one impaired class of creditors has voted to accept the plan.  The Debtor believes that the Plan will satisfy all the applicable requirements of section 1129 of the Bankruptcy Code.

1.    Unfair Discrimination and Fair and Equitable Tests.  To obtain non-consensual confirmation of the Plan, it must be demonstrated to the Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, non-accepting class.  The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable."  The Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity holders, as follows:

(a)    Secured Creditors.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens, with such liens

to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) of this subparagraph.

(b) <u>Unsecured Creditors</u>. Either (i) each impaired unsecured creditor receives or retains, under the plan, property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

(c) <u>Equity Interests</u>. Either (i) each holder of an equity interest will receive or retain, under the plan, property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

If the Plan is not accepted by all impaired Classes of Claims and Equity Interests, the Debtor reserves the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code. The Debtor believes that the Plan may be confirmed pursuant to the above-described "cramdown" provisions, over the dissent of certain Classes of Claims and Interests, in view of the treatment proposed for such Classes. The Debtor believes that the treatment under the Plan of the holders of Claims in Classes 1 and 2 satisfies the "fair and equitable" test. In addition, the Debtor does not believe that the Plan unfairly discriminates against any dissenting Class because all dissenting Classes of equal rank are treated equally under the Plan.

2. <u>Best Interests Test</u>. With respect to each impaired Class of Claims and Interests, confirmation of the plan requires that each holder of a Claim or Interest against the Debtor either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

The Debtor believes that Unsecured Creditors will receive more under the Plan than in a chapter 7 liquidation. In a Chapter 7, Western, the secured Noteholder would obtain relief from the stay and foreclose on the property and would assert liens in all of the Debtor's cash. Accordingly, there would be no funds available for Unsecured Creditors in a Chapter 7 liquidation.

3. <u>Feasibility</u>. Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successors to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. The financial projections attached in **Exhibit A** attached hereto demonstrate that Debtor will be able to fund distributions under the Plan through revenue generated from operating and the infusion of $1,000,000.00 in new capital raised from the issuance of Preferred Equity as contemplated by the Plan. Accordingly, the Debtor believes that the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

G.    Risks Associated with the Plan.

HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE INFORMATION SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE) PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.    This information, however, should not be regarded as the only risk involved in connection with the Plan and its implementation.  In addition, in the event that market conditions change, Debtor may not meet its financial projections.

## VI.    EFFECT OF CONFIRMATION OF PLAN

A.    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims and Interests, and their respective successors and assigns.

B.    Releases

### 1.    *Releases by the Debtor*

On the Effective Date, the Debtor shall release unconditionally its current partners, advisors, accountants, investment bankers, consultants, and attorneys, from any and all claims, obligations, suits, judgments, damages, rights, causes of action, and liabilities whatsoever (other than the right to enforce the performance of their respective obligations, if any, to the Debtor or Reorganized Debtor under the Plan and the contracts, instruments, releases and other agreements delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act or omission, transaction, event, or other occurrence taking place on or after the Petition Date and prior to or on the Effective Date and in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, including Reorganized Debtor in its role in administering the Plan.

### 2.    *Releases by Holders of Claims and Interests*

On the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, in consideration for the obligations of the Debtor and Reorganized Debtor under the Plan and the Cash and other contracts, instruments, releases, agreements or documents to be delivered in connection with the Plan, each entity (other than a Debtor) that has held, holds or may hold a Claim or Interest, as applicable, will be deemed to forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the Debtor's or Reorganized Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place at any time

on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement that such entity has, had or may have against the Debtor; *provided, however*, that the Plan does not release, enjoin, or otherwise affect in any way any Claims by any party against any and all former partners of the Debtor and any other non-Debtor third party.

### 3. *Temporary Injunction*

Upon Confirmation of the Plan, all creditors of Debtor having an Allowed Claim herein shall be temporarily enjoined, pursuant to Section 105 of the Code, from proceeding against any officer, director, shareholder, employee, or other responsible person of Debtor, individually, including, but not limited to, Woodrow Brownlee and David Burgher, for the collection of all or any portion of their Allowed Claim, said injunction to remain in effect only for so long as the Debtor complies with the terms of the Plan. Any violation of the Plan that remains uncured for thirty (30) days after receipt by the Debtor of written notice from any party affected by such violation, shall automatically and without order of the Court result in the dissolution of the injunction granted hereunder as to said affected party.

### C. Discharge of Claims

Pursuant to section 1141(d)(1) of the Bankruptcy Code, Confirmation will discharge Claims against the Reorganized Debtor and no holder of a Claim against the Reorganized Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against the Reorganized Debtor, its successors or property, except as expressly provided herein.

### D. Exculpation and Limitation of Liability

Neither the Debtor, nor any of its respective present or former partners (who were partners on the Petition Date), advisors or attorneys, shall have or incur any liability to, or be subject to any right of action by, any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, shareholders, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission occurring on or after the Petition Date in connection with, relating to, or arising out of, the Debtor's Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan, *provided, however*, that the Plan does not release or otherwise affect any pre-petition Claim against any former partner of the Debtor who served in such position prior to, but not on or after, the Petition Date.

### E. Injunction

Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, hold or may hold a Claim or other debt or liability against the Debtor or its Estate are permanently enjoined from taking any of the following actions against the Debtor or its Estate, the Reorganized Debtor, or any of its property on account of any such Claims or Interests: (a) commencing or continuing, in any manner or in any place,

any action or other proceeding; (b) enforcing attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its Estate; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, *however*, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.

By receiving notice of the Plan and the Confirmation Order, each holder of an Allowed Claim or Allowed Interest will be deemed to have specifically consented to the injunctions set forth in this Article X.E.

F. Satisfaction of Subordination Rights

Nothing in this Plan shall affect any rights and claims between or among Claimholders relating in any manner whatsoever to distributions on account of Claims against or Interests in the Debtor, based upon any subordination rights, whether asserted or unasserted, legal or equitable. Distributions to the various Classes of Claims and Interests hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Claimholder or Interestholder by reason of any subordination rights or otherwise, so that each Claimholder and Interest holder shall have and receive, the benefit of the distributions in the manner set forth in the Plan, any beneficiary of such subordination rights shall have no claim or cause of action against the Debtor or any Cash or property to be distributed under the Plan and must assert such subordination rights directly against Claimholders or Interestholders subject to such subordination rights.

G. Settlement Authority

Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various Claims against it and/or claims that it may have against other Persons. The Debtor expressly reserves the right (with Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and claims that it may have against other Persons up to and including the Effective Date. After the Effective Date, such rights shall lie solely with Reorganized Debtor pursuant to Article V.H of the Plan.

H. Retention of Jurisdiction.

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

2.   Hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of its Estate, wherever located;

3.   Hear and determine all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Debtor may be liable, including, if necessary, the nature or amount of any required Cure of the liquidation or allowance of any Claims arising therefrom;

4.   Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.   Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

6.   Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

7.   Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

8.   Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Court including, without limitation, the Confirmation Order;

9.   Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code, provided, however, that from and after the Effective Date the payment of fees and expenses of the Professionals of the Reorganized Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Court;

10.  Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

11.  Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

823128v4

12. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

13. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

14. Hear and determine disputes with respect to Reorganized Debtor's administration of the Plan, and any disputes with respect to professional advisors retained in conjunction with administration of the Plan, including but not limited to disputes relating to compensation of such professional advisors;

15. Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

16. Enter a final decree closing the Chapter 11 Case.

## VII. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

A. <u>General</u>. A summary description of certain federal income tax consequences of the Plan is provided below. The description of tax consequences below is for informational purposes only and is subject to significant uncertainties. Only the principal consequences of the Plan for the Debtor and for the Holders of Claims or Interests who are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is given by this Disclosure Statement. No rulings or determinations of the Internal Revenue Service ("IRS") or any other tax authorities have been obtained or sought with respect to the Plan, and the description below is not binding upon the IRS or such other authorities.

The following discussion of federal income tax consequences is based on the Internal Revenue Code (the "Code"), regulations promulgated and proposed thereunder, judicial decisions and published administrative rulings and pronouncements of the IRS as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter the analyses and conclusions set forth below. Any such changes or interpretations may be retroactive and could significantly affect the federal income tax consequences discussed below.

*This discussion does not address foreign, state or local tax consequences of the Plan, nor does it purport to address the federal tax consequences of the Plan to special classes of taxpayers (such as foreign entities, nonresident alien individuals, S corporations, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, broker/dealers and tax-exempt organizations). Furthermore, estate and gift tax issues are not addressed herein.*

823128v4

*No representations are made regarding the particular tax consequences of the Plan to any Holder of a Claim or Interest. Each Holder of a Claim or Interest is strongly urged to consult its own tax advisor regarding the federal, state, local and foreign tax consequences of the transactions described herein and in the Plan.*

B.      Federal Income Tax Consequences to the Debtor.

1.      Regular Federal Income Tax.  Federal income taxes, like many other taxes, are priority claims.  Accordingly, such claims must be satisfied before most other claims may be paid.  The Debtor is a "flow through" entity and pays no federal income taxes.

C.      Federal Income Tax Consequences to Holders of Claims.  Holders of Claims or Interests should generally recognize gain (or loss) to the extent the amount realized under the Plan in respect of their Claims exceeds (or is exceeded by) their respective tax bases in their Claims or Interests.  The amount realized for this purpose will generally equal the amount of cash received under the Plan in respect of their respective Claims or Interests.

The tax treatment of Holders of Claims or Interests and the character and amount of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan will depend upon, among other things, (i) the manner in which a holder acquired a Claim or Interest; (ii) the length of time a Claim or Interest has been held; (iii) whether the Claim or Interest was acquired at a discount; (iv) whether the Holder has taken a bad debt deduction in the current or prior years; (v) whether the Holder has previously included accrued but unpaid interest with respect to a Claim or Interest; (vi) the method of tax accounting of a Holder, and (vii) whether a Claim or Interest is an installment obligation for federal income tax purposes. Therefore, HOLDERS OF CLAIMS OR INTERESTS SHOULD CONSULT THEIR OWN TAX ADVISORS FOR INFORMATION THAT MAY BE RELEVANT TO THEIR PARTICULAR SITUATION AND CIRCUMSTANCES AND THE PARTICULAR TAX CONSEQUENCE TO SUCH HOLDERS AS A RESULT THEREOF.

D.      Information Reporting and Backup Withholding.  Certain payments, including the payments of Claims or Interests pursuant to the Plan, are generally subject to information reporting by the payor (the Debtor or Reorganized Debtor) to the IRS.  Moreover, such reportable payments are subject to backup withholding under certain circumstances.  Under the Code's backup withholding rules, a Holder of a Claim or Interest may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan, unless the Holder: (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income.

E.      Importance of Obtaining Professional Tax Assistance.

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE

ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDING-LY, HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSE-QUENCES OF THE PLAN.

## VIII.   CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to other alternatives because it will result in the greatest recovery to Holders of Claims against and Interests in the Debtor.  Other alternatives would involve significant delay, uncertainty, and substantial administrative costs.

Consequently, the Debtor urges all Holders of Claims and Interests entitled to vote to accept the Plan and to evidence their acceptance by duly completing and returning their Ballots so that they are received on or before 5:00 p.m., prevailing Central Standard Time, on May 17, 2011.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK - SIGNATURE PAGE FOLLOWS]**

823128v4

Dated: May 4, 2011

Respectfully submitted,

VILLAGE AT CAMP BOWIE I, LP, a Texas limited partnership

By:  VCBGP I, LLC, a Texas limited company, Its General Partner


/s/Woodrow R. Brownlee  (05/03/2011)
Woodrow R. Brownlee
Its: Manager

COUNSEL:


By: /s/J. Mark Chevallier   (05/03/2011)
     J. Mark Chevallier
     State Bar No. 04189170
     David L. Woods
     State Bar No. 24004167
     James G. Rea
     State Bar No. 24051234
     McGuire, Craddock & Strother, P.C.
     2501 N. Harwood
     Suite 1800
     Dallas, Texas   75201
     Telephone:  (214) 954-6800
     Facsimile:  (214) 954-6868
     Counsel to the Debtor and Debtor-in-Possession

823128v4