J. Mark Chevallier (State Bar No. 04189170)
David L. Woods (State Bar No. 24004167)
James G. Rea (State Bar No. 24051234)
McGuire, Craddock & Strother, P.C.
2501 N. Harwood
Suite 1800
Dallas, Texas 75201
(214) 954-6800 – Telephone
(214) 954-6850 – Telecopier
Email: mchevaller@mcslaw.com
Email: dwoods@mcslaw.com
Email: jrea@mcslaw.com
**ATTORNEYS FOR DEBTOR and**
**DEBTOR-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | CASE NO. 10-45097-DML-11 |
| VILLAGE AT CAMP BOWIE I, L.P., | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

## SECOND AMENDED PLAN OF REORGANIZATION OF VILLAGE AT CAMP BOWIE I, L.P.

Dated:  May 3, 2011

J. Mark Chevallier
State Bar No. 04189170
David L. Woods
State Bar No. 24004167
James G. Rea
State Bar No. 24051234
MCGUIRE, CRADDOCK & STROTHER, P.C.
2501 N. Harwood
Suite 1800
Dallas, Texas  75201
Telephone:  (214) 954-6800
Facsimile:  (214) 954-6850
COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARTICLE I - DEFINITIONS, RULES OF INTERPRETATION, .................................1

    A. Scope of Definitions; Rules of Construction .................................................1

    B. Definitions .................................................................................................1

    C. Rules of Interpretation................................................................................7

    D. Computation of Time .................................................................................7

ARTICLE II - CLASSIFICATION OF CLAIMS AND INTERESTS .........................7

    A. Introduction...............................................................................................7

    B. Summary of Unclassified Claims (not entitled to vote on the Third Joint Plan) ............8

    C. Summary of Classified Claims and Interests ................................................8

    D. Classification of Impaired Classes of Claims and Interests...........................8

ARTICLE III - TREATMENT OF CLAIMS AGAINST AND INTERESTS.................9

    A. Unclassified Claims ...................................................................................9

    B. Unimpaired Classes of Claims ..................................................................10

    C. Setoffs and Other Claims or Defenses Against Claims.................................11

ARTICLE IV - ACCEPTANCE OR REJECTION OF THE PLAN............................11

    A. Impaired Classes of Claims and Interests Entitled to Vote...........................11

    B. Acceptance by an Impaired Class ..............................................................11

    C. Classes Deemed to Reject Plan .................................................................11

    D. Summary of Classes Voting on the Plan.....................................................12

    E. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code .............12

ARTICLE V - MEANS FOR IMPLEMENTATION OF THE PLAN.........................12

    A. Continued Corporate Existence of Reorganized Entity ................................12

823175v5

B. Raising of Additional Capital................................................................................12

C. General Partner of Reorganized Entity ................................................................13

D. Partnership Action................................................................................................13

E. Effectuating Documents; Further Transactions.....................................................13

F. Administration of the Plan....................................................................................13

G. Revesting of Assets...............................................................................................15

H. Preservation of Rights of Action..........................................................................15

I. Sources of Cash for Plan Distributions..................................................................15

J. Exemption from Certain Transfer Taxes................................................................15

K. Release of Liens....................................................................................................15

ARTICLE VI - PROVISIONS GOVERNING DISTRIBUTIONS...................................16

A. Distributions for Claims or Interests Allowed as of the Effective Date ...............16

B. Interest on Claims or Interests..............................................................................16

C. Distributions by Plan Administrator .....................................................................16

D. Delivery of Distributions and Undeliverable or Unclaimed Distributions ...........16

E. Means of Cash Payment ........................................................................................17

F. Withholding and Reporting Requirements .............................................................17

G. Setoffs ..................................................................................................................17

H. Fractional Dollars; De Minimus Distributions......................................................18

I. Bar Date.................................................................................................................18

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS ..................................19

A. Contracts and Leases............................................................................................19

B. Assumed Contracts and Leases .............................................................................19

C. Rejection Damages Bar Date ................................................................................19

D. Indemnification Obligations .................................................................................20

ARTICLE VIII - PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
    AND UNLIQUIDATED CLAIMS AND DISPUTED INTERESTS .............................20

    A. Claims Objection Deadlines; Prosecution of Objections...........................................20

    B. No Distributions Pending Allowance.........................................................................20

    C. Distributions After Allowance ...................................................................................20

ARTICLE IX - CONDITIONS PRECEDENT TO CONFIRMATION AND
    CONSUMMATION OF THE PLAN ...................................................................................21

    A. Conditions to Confirmation .......................................................................................21

    B. Conditions to Effective Date .....................................................................................21

    C. Waiver of Conditions ................................................................................................21

ARTICLE X - EFFECT OF PLAN CONFIRMATION.........................................................22

    A. Binding Effect............................................................................................................22

    B. Releases .....................................................................................................................22

    C. Discharge of Claims ..................................................................................................23

    D. Exculpation and Limitation of Liability....................................................................23

    E. Injunction...................................................................................................................23

    F. Satisfaction of Subordination Rights .........................................................................24

    G. Settlement Authority .................................................................................................24

ARTICLE XI - RETENTION OF JURISDICTION .............................................................24

ARTICLE XII - MISCELLANEOUS PROVISIONS ...........................................................26

    A. Bar Dates for Certain Claims ....................................................................................26

    B. Payment of Statutory Fees.........................................................................................27

    C. Amendment or Modification of the Plan....................................................................27

    D. Severability of Plan Provisions .................................................................................27

    E. Successors and Assigns ..............................................................................................28

    F. Plan Supplement ........................................................................................................28

G. Revocation, Withdrawal or Non-Consummation..................................................28

H. Notice ................................................................................................................28

I. Governing Law ...................................................................................................29

J. Term of Inunctions or Stay................................................................................29

# INTRODUCTION

Village at Camp Bowie I, LP, debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby proposes the following plan of reorganization (the "Plan") for the resolution of outstanding creditor claims against and equity interests in the Debtor. All capitalized terms not defined in this Introduction have the meanings ascribed in Article I.B of the Plan. Reference is made to the Second Amended Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's history, business, properties and operations, a summary and analysis of the Plan, and certain related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from holders of Claims or Interests until such time as the Disclosure Statement has been approved by the Court and distributed to such holders. ALL HOLDERS OF CLAIMS AND ALL HOLDERS OF INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

# ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

### A.     Scope of Definitions; Rules of Construction

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.B of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B.     Definitions

1.1     "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary, costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the businesses of the Debtor, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, (b) Professional Fee Claims, (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930 and (d) all Allowed Claims pursuant to a Final Order of the Court under section 503(b)(9) of the Bankruptcy Code.

823175v5

1.2　　"Administrative Claims Bar Date" means the last day for filing Administrative Claims, which day shall be ten (10) days after the Effective Date.

1.3　　"Allowed" means, when used in reference to a Claim or Interest a Claim or Interest as to which no objection has been filed by the respective Claim Objection Deadline set forth in this Plan or an Order of the Court.

1.4　　"Allowed Class ... Claim" means an Allowed Claim in the particular Class described.

1.5　　"Ballot" means each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims and/or Interests entitled to vote under Article IV hereof in connection with the solicitation of acceptances of the Plan.

1.6　　"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended.

1.7　　"Bankruptcy Rules" means collectively the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court for the Northern District of Texas, as the case may be.

1.8　　"Bar Date" means December 2, 2010.

1.9　　"Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.10　　"Cash" means legal tender of the United States of America and equivalents thereof.

1.11　　"Chapter 5 Causes of Action" means those claims and causes of action arising under Sections 544, 547, 548 and 550 of the Bankruptcy Code.

1.12　　"Chapter 11 Case" means the chapter 11 case of Village at Camp Bowie I, LP filed in the Northern District of Texas, Fort Worth Division, under case no. 10-45097.

1.13　　"Claim" means a claim, as such term is defined by section 101(5) of the Bankruptcy Code, against the Debtor, whether or not asserted.

1.14　　"Claimholder" means a holder of a Claim.

1.15　　"Claims Objection Deadline" means the last day for Filing objections to Disputed Claims or Disputed Interests which day shall be (i) the 45th day following the Confirmation Date or (ii) such other date as the Court may order.

1.16    "Claims Registry" means the official list of Claims and Interests in this Chapter 11 Case maintained by the Debtor.

1.17    "Class" means a category of holders of Claims or Interests, as described in Article II hereof.

1.18    "Class 1 Claim" means the Secured Claim of Western.

1.19    "Class 2 Claims" mean the General Unsecured Claims of Creditors.

1.20    "Class 3 Equity Interests" mean the partnership interests held by the Debtor's Interest Holders.

1.21    "Collateral" means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state laws.

1.22    "Confirmation" means entry by the Court of the Confirmation Order.

1.23    "Confirmation Date" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

1.24    "Confirmation Hearing" means the hearing to consider confirmation of the Plan under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.25    "Confirmation Order" means the order entered by the Court confirming the Plan.

1.26    "Court" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, currently presiding over this Chapter 11 Case or such other court as may have jurisdiction over the Chapter 11 Case.

1.27    "Creditor" means any Entity who holds a Claim against the Debtor.

1.28    "Cure" means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

1.29    "Debtor" means Village at Camp Bowie I, LP, a Texas limited partnership.

1.30    "Disallowed Claim" or "Disallowed Interest" means a Claim or any portion thereof, or an Interest or any portion thereof, against the Debtor that (a) has been disallowed, (b) is Scheduled at zero or Scheduled as contingent, disputed or unliquidated and as to which a proof of claim or interest bar date has been established but no proof of claim or interest has been filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court or otherwise deemed timely filed under applicable law, or (c) is not Scheduled and as to which a proof of claim or interest bar date has been established but no proof of claim or interest has been filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court or otherwise deemed timely filed under applicable law.

1.31    "Disclosure Statement" means the written disclosure statement (including all schedules thereto or referenced therein) that relates to the Plan, as approved by the Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

1.32    "Effective Date" means the Business Day on which all conditions to the consummation of the Plan as set forth in Article X.B hereof have been satisfied or waived as provided in Article X hereof and is the effective date of the Plan.

1.33    "Entity" means an Entity as defined in section 101(15) of the Bankruptcy Code.

1.34    "Estate" means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.35    "Face Amount" means (a) when used in reference to a Disputed or Disallowed Claim, either (i) the full stated liquidated amount claimed by the holder of such Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Court or other applicable bankruptcy law or (ii) if such Claim is unliquidated, zero, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

1.36    "File," "Filed," or "Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

1.37    "Final Order" means an order or judgment of the Court, as entered on the docket in the Chapter 11 Case, or the order or judgment of any other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed, or, if filed, remains pending.

1.38    "General Unsecured Claim" means a Claim that is a Class 2 General Unsecured Claim.

1.39    "Impaired" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.40    "Interest" means (a) the legal, equitable, contractual and other rights of any Person with respect to the partnership or any other equity interest in the Debtor and (b) the legal, equitable, contractual or other rights of any Person to acquire or receive any of the foregoing.

1.41    "Interest Holder" means a holder of an Interest.

1.42    "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.43    "Litigation Claims" means the claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, or that is deemed property of the Debtor's Estate under the Plan or applicable bankruptcy law, which are retained by the Debtor pursuant to Article V.H of this Plan. Litigation Claims includes Chapter 5 Causes of Action.

1.44    "New Western Note" means, the new note which will be issued by the Reorganized Debtor to Western on the Effective Date, which along with the cash to be paid to Western on the Effective Date will pay the Allowed Western Secured Claim in full, and which will contain the following terms:

(i)      Original Principal Balance - $32,264,938.00
(ii)     Term - 5 years
(iii)    Interest Rate - 5.83%
(iv)     Payments - Monthly interest only, due on 10th of month for first 36 months, thereafter with principal and interest payments based on a 30 year amortization for months 37-59 and a balloon of unpaid balance at the end of the 5 year term
(v)      Collateral - All existing collateral securing Western's Allowed Secured Claim

1.45    "Person" means a person as such term is defined in section 101(41) of the Bankruptcy Code.

1.46    "Petition Date" means August 2, 2010, the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

1.47    "Plan" means this chapter 11 plan and all Plan Exhibits, either in its present form or as the same may be altered, amended or modified from time to time.

1.48    "Plan Exhibit" means any exhibit attached to the Plan.

1.49    "Plan Supplement" means the compilation of documents and forms of documents specified in the Plan which will be filed with the Court on or prior to May 9, 2011.

1.50    "Postpetition Interest" means interest accruing after the Petition Date until payment of an Allowed Claim.

1.51    "Preferred Equity" means the new preferred equity to be contributed to the Reorganized Debtor from the existing limited partners or new third party investors in the amount of $1,000,000 which shall be subject to the following terms: (i) a 12% annual return paid quarterly (ii) a preferred return of 20% payable only after the New Western Note has been paid in full and (iii) a restriction on any return of capital to the holders of the Preferred Equity until the New Western Note has been paid in full.

1.52    "Professional" means any professional employed in the Chapter 11 Case pursuant to section 327, 328 or 1103 of the Bankruptcy Code or otherwise and any professional seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.53    "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to or on the Effective Date.

1.54    "Reorganized Debtor" means Debtor Village at Camp Bowie I, LP as it will exist on and after the Effective Date and pursuant to the Plan.

1.55    "Scheduled" means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.56    "Schedules" means the schedules of assets and liabilities, the list of holders of Interests and the statements of financial affairs filed by the Debtor on August 27, 2010, as such schedules or statements have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Court.

1.57    "Secured Claim" means a Claim (a) secured by a Lien on property in which an Estate has an interest or (b) that is subject to setoff under section 553 of the Bankruptcy Code and such right of setoff has been asserted by the holder of such right prior to the Confirmation Date in a properly filed motion for relief from the automatic stay, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.58    "Solicitation Order" means the order entered by the Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

1.59    "Subordinated Claim" means any claim subordinated pursuant to a Final Order under section 510(c) of the Bankruptcy Code.

1.60    "Unimpaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.61    "Unimpaired Claim" means a Claim that is not an Impaired Claim.

1.62    "Unimpaired Interest" means an Interest that is not an Impaired Interest.

1.63    "Voting Deadline" means the last day for submitting Ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, as specified in the Solicitation Order.

1.64    "Western" or "Noteholder" means Western Real Estate Equities, LLC, a Secured Claimant of the Debtor.

## C.    Rules of Interpretation

For purposes of this Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## D.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

## A.    Introduction

This Plan contemplates that the Debtor will pay its creditors 100% of the Allowed Amount of their Claims. Funds for such payments shall come from cash on hand plus $1,000,000 from the Preferred Equity to be issued to participating Interest Holders of the Debtor or other third party investors and from future revenue of the Reorganized Debtor.

The Allowed Secured Claim of Western will be paid through a combination of cash and issuance of the New Western Note which shall have a 5 year term, bear interest at a rate

of 5.83% per annum, with interest only payments for the first 36 months following the effective date, principal and interest payments based on a 30 year amortization for months 37- 59 with the remaining principal balance and all accrued and unpaid interest due at maturity in month 60. The Claims of General Unsecured Creditors shall be paid in full, without interest through three monthly payments beginning on the Effective Date. Existing Equity Interest Holders which participate in and fund at least their pro rata share of the Preferred Equity shall retain their existing partnership interests in the Reorganized Debtor, subject to subordination to the Preferred Equity which will be used to fund the Plan. Any Holder of an Equity Interest that does not subscribe for and fund the Preferred Equity in an amount at least equal to their pro rata share of the existing Partnership Interests in the Debtor shall forfeit their existing Equity Interest and such Equity Interest shall be cancelled and terminated as of the Effective Date of the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Confirmation Date.

**B.     Summary of Unclassified Claims (not entitled to vote)**

1.     Administrative Claims

2.     Secured Tax Claims

**C.     Summary of Classified Claims and Interests**

Class

Class 1: Secured Claim of Western

Class 2: General Unsecured Claims

Class 3: Equity Interests

**D.     Classification of Impaired Classes of Claims and Interests**

Classes 1, 2 and 3 are entitled to vote on the Plan.

1.   Class 1:  Secured Claims of Western.  This class consists of the Secured Claim of Western, the owner and holder of the Notes.

2.   Class 2:  General Unsecured Claims.  This class consists of all General Unsecured Claims against the Debtor.

3.   Class 3:  Equity Interests.  This class consists of all Equity Interests in the Debtor.

# ARTICLE III
# TREATMENT OF CLAIMS AGAINST AND INTERESTS

## A.    Unclassified Claims

### 1.    *Administrative Claims*

(a)    <u>Allowed Administrative Claims</u>.    Except to the extent that the Holder of a particular Administrative Claim has agreed to different treatment, each Holder of an Allowed Administrative Claim shall be paid in cash, in full, as soon as practicable after the later of: (a) the Effective Date, (b) the date the Claim becomes an Allowed Claim, or (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor's businesses, the date the payment is due in the ordinary course of business.    Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code, other than by the Debtor's Professionals must be filed on or before the Administrative Claims Bar Date or the holder of such Claim shall be forever barred from asserting such Claim or receiving any payment on account of such Claim.

(b)    <u>Administrative Claims of Professionals</u>.

    (i)    <u>Deadline to File Professional Administrative Claims</u>.    All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of Sections 327, 328, 330, 331, 503(b), and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, *inter alia*, any compensation requested by a professional or any other Person for making a substantial contribution in the Bankruptcy Cases) shall file and serve on the Debtor, counsel for the Debtor and the U.S. Trustee an application for final allowance of compensation and reimbursement of expenses no later than (i) forty-five (45) days after the Effective Date, or (ii) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period.

    (ii)    <u>Objections to Professional Administrative Claims</u>.    Objections to applications of Professionals or other Persons for compensation or reimbursement of expenses must be filed with the Bankruptcy Court and served on the Debtor, counsel for the Debtor and the U.S. Trustee and the professionals to whose application the objections are addressed on or before (i) twenty (20) days after such application is filed and served or (ii) such later date as the Bankruptcy Court shall order upon motion made prior to the end of such 20-day period or upon agreement by the affected Professional.

### 2.    *Secured Tax Claims*

(a)    Allowed Secured Claims of the Tax Authorities (those governmental entities which hold liens against real or personal property of the Debtor to secure taxes owed by the

Debtor for 2010 and subsequent tax years) shall be paid in the ordinary course of business without the need for any secured taxing entity to file a claim or request for payment with the bankruptcy court.

(b)     Notwithstanding anything in the Plan, and Exhibits or Supplements thereto, or the Confirmation Order, the Tax Authorities shall retain their respective tax liens against the applicable property or properties until all taxes are paid in full.

## B.     Impaired Classes of Claims and Interests

### 1.     *Class 1: Secured Claim of Western*

Class 1 is impaired.  The Allowed Secured Claim of Western, as determined by the Court, will be paid as follows:

(a)     All accrued but unpaid post-petition interest and any fees or costs allowed by the Court under Section 506(b) of the Bankruptcy Code shall be paid in full in cash on the Effective Date;

(b)     The remaining portion of the Allowed Secured Claim of Western shall be paid through the issuance of the New Western Note on the Effective Date;

(c)     The New Western Note shall be secured by the same property which was valued in determining Western's Allowed Secured Claim; and

(d)     The Reorganized Debtor shall file as part of the Plan Supplement the form of the New Western Note, Deed of Trust, Security Agreement and Fixture Filing and an Assignment of Rents and Leases in favor of Western, as modified to conform to the Plan.  The modified Deed of Trust shall contain a provision allowing partial releases of portions of the collateral securing the New Western Note ("Proposed Release Parcel") upon satisfaction of the following conditions: (i)  all of the net sale or refinance proceeds from the Proposed Release Parcel shall be paid to Western and applied to reduce the principal balance of the New Western Note;  (ii) the remaining principal balance of the New Western Note after credit for the payment described in (i) above must not exceed seventy five percent (75%) of the value of the remainder of the property constituting collateral for the New Western Note, with such value determined by a then current appraisal approved by Western and paid for by the Reorganized Debtor; and (iii) the Net Operating Income produced by the remainder of the property must be sufficient to provide a minimum 1.25 debt service coverage ratio, assuming an interest rate equal to 250 basis points over 10 year treasury notes and a 30 year amortization period.

### 2.     *Class 2: General Unsecured Claims*

Class 2 is impaired.  Holders of General Unsecured Claims will be paid 100% of the allowed amount of their claims, without interest, in three (3) equal monthly installments commencing on the Effective Date.

*3.      Class 3: Equity Interest Holders*

Class 3 is impaired.  Holders of Equity Interests which participate in and fund at least their pro rata share of the  Preferred Equity shall retain their existing partnership interests in the Reorganized Debtor, subject to subordination to the Preferred Equity which will be used to fund the Plan.  Any Holder of an Equity Interest that does not subscribe for and fund the Preferred Equity in an amount at least equal to their pro rata share of the existing Partnership Interests in the Debtor shall forfeit their existing Equity Interest and such Equity Interest shall be cancelled and terminated as of the Effective Date of the Plan.  To the extent any existing Holder of an Equity Interest which subscribes to the Preferred Equity  or any new third party investor funds some or all of the pro rata share of the Preferred Equity allocable to an Equity Interest Holder which elects not to subscribe to its pro rata share of the Preferred Equity, such subscribing Interest Holder(s)  or new investor  will be issued a proportionate share of new equity interests in the Reorganized Debtor which new interests shall equal the proportionate share of Equity Interests previously owned by the non subscribing Equity Interest Holder. Holders of Equity Interests and/or Preferred Equity in the Reorganized Debtor shall not receive any distribution or return of capital on account of such Equity Interest or Preferred Equity, other than a quarterly yield of 12% payable on the Preferred Equity, until such time as the New Western Note is  paid in full.

**C.      Setoffs and Other Claims or Defenses Against Claims**

Except as otherwise provided in the Plan, nothing shall affect the rights, claims or defenses, whether legal or equitable, of the Debtor with respect to legal and equitable defenses to setoff, recoupment, or other such claims or defenses against any Claims or Interests.

**ARTICLE IV
ACCEPTANCE OR REJECTION OF THE PLAN**

**A.      Impaired Classes of Claims and Interests Entitled to Vote**

Subject to Articles IV.C and IV.D below, Claimholders and Interest Holders in Classes 1, 2 and 3 are entitled to vote as a class to accept or reject the Plan.

**B.      Acceptance by an Impaired Class**

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Plan is accepted by the holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept the Plan.

**C.      Classes Deemed to Reject Plan**

None.

D.      **Summary of Classes Voting on the Plan**

1.      *Class 1: Secured Claims of Western*

Per the treatment of Class 1 Claims of Western under Article III.C.1 of this Plan, the vote of Western will be solicited with respect to this Plan.

2.      *Class 2: General Unsecured Claims*

Per the treatment of Class 2 General Unsecured Claims under Article III.C.2 of this Plan, the votes of holders of Claims in Class 2 will be solicited with respect to this Plan.

3.      *Class 3: Equity Interests*

Per the treatment of Class 3 Equity Interest under Article III.C.3 of this Plan, the votes of holders of Interests in Class 3 will be solicited with respect to this Plan.

E.      **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Debtor requests confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Exhibit, to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      **Continued Corporate Existence of Reorganized Entity**

Reorganized Debtor shall emerge on the Effective Date in accordance with the laws of the State of Texas and pursuant to the partnership agreement of Debtor in effect prior to the Effective Date, as amended under the Plan. The Debtor will be authorized to engage in any lawful activity for which limited partnerships may be organized under Texas Law. After emerging from bankruptcy, the Reorganized Debtor will continue in business in a form and manner substantially similar to its pre-petition business practices.

Upon Plan Confirmation and after the Effective Date, the Reorganized Debtor will be structured in a manner identical to the current structure of the Debtor.

B.      **Raising of Additional Capital**

The Reorganized Debtor will raise new capital in the amount of $1,000,000 by means of the sale of Preferred Equity in the Reorganized Debtor to either existing Equity Interest Holders or a third party investor. Such sale shall occur on the Effective Date. The new capital shall be used to fund the Plan as provided in the Debtor's Plan projections which are attached to the Disclosure Statement as **Exhibit B**.

### C. General Partner of Reorganized Entity And Asset Manager

The general partner of the Debtor as of the Effective Date, VCBGP I, LLC, will remain in its position post-Effective Date. Trophy Investments Realty LLC, an affiliate of the general partner will continue to act as the asset manager for the Reorganized Debtor and will be paid a fee of $12,000 a month for such services.

### D. Partnership Action

Each of the matters provided for under the Plan involving the partnership structure of the Debtor or partnership action to be taken by or required of the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein and shall be authorized and approved in all respects without any requirement or further action by the general partner of the Debtor.

### E. Effectuating Documents; Further Transactions

Woodrow R. Brownlee, Manager of VCBGP I, LLC, in its capacity as general partner of the Debtor, shall be authorized to execute, deliver, file, or record such contracts, instruments, release, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### F. Administration of the Plan

The Plan shall be administered by Reorganized Debtor from and after the Effective Date. Reorganized Debtor, in its sole discretion, may delegate to any individual or firm any or all of the rights or responsibilities contained in this Section V.I of the Plan.

#### 1. Rights, Powers and Duties of Reorganized Debtor as Plan Administrator

Reorganized Debtor shall retain and have all the rights, powers and duties necessary to carry out its responsibilities under the Plan. Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with the Plan, such rights, powers and duties, which shall be exercisable by Debtor on behalf of the Estate pursuant to the Plan shall include, among others:

(A)    investing the Cash of the Estate;

(B)    establishing a Claim Trust Account(s) as necessary;

(C)    calculating and paying all distributions to be made under the Plan and other orders of the Court to holders of Allowed Claims against and Interests in the Estate;

(D)    employing, supervising and compensating professionals retained to represent the interests of and serve on behalf of the Estate;

(E)    objecting to Claims or Interests filed against the Estate;

(F)     seeking estimation under section 502(c) of the Bankruptcy Code of contingent or unliquidated claims filed against the Estate;

(G)     seeking determination of tax liability of the Estate under section 505 of the Bankruptcy Code;

(H)     prosecuting Litigation Claims;

(I)     seeking subordination of Claims; and

(J)     taking any and all other actions necessary or appropriate to implement or consummate this Plan, the Confirmation Order, and any other relevant document.

2.     *Indemnification*

The Debtor and Reorganized Debtor shall, to the fullest extent permitted by the applicable laws of the jurisdiction in which each such entity is incorporated or otherwise organized, indemnify and hold harmless the directors, officers, agents, representatives, professionals, and employees of Reorganized Debtor in connection with the administration of the Plan (collectively the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Estate or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Debtor or Estate, as the case may be, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful.  To the extent the Debtor, its Estate, or the Reorganized Debtor indemnify and hold harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Indemnified Parties in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid out of the Debtor's Estate.

3.     *Insurance*

In its role in administering the Plan, Reorganized Debtor shall be authorized to obtain all reasonably necessary insurance coverage for itself, its agents, representatives, employees, or independent contractors including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Estate and (ii) the liabilities, duties and obligations of Reorganized Debtor and its agents, representatives, employees or independent contractors.

4.     *Authority to Object to Claims and Interests and to Settle Disputed Claims*

From and after the Effective Date, Reorganized Debtor shall be authorized (i) to object to Claims or Interests filed against the Debtor and (ii) pursuant to Bankruptcy Rule 9019(b) and section 105(a) of the Bankruptcy Code, to compromise and settle Disputed Claims and Disputed Interests.

### G. Revesting of Assets

On or following the Effective Date, the property of the Estate of the Debtor shall revest with the Reorganized Debtor and the Court shall relinquish jurisdiction over such property and any claims asserted against such property, except as retained under Article XII herein.

### H. Preservation of Rights of Action

Except as otherwise provided in the Plan or the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b), the Reorganized Debtor shall retain the Litigation Claims. All rights retained by the Reorganized Debtor under this Section may be exercised by the Reorganized Debtor in its sole discretion.

The Reorganized Debtor shall have the authority to compromise any claims including Litigation Claims. The Debtor and Reorganized Debtor expressly preserve the right to bring any and all Litigation Claims against any and all parties under applicable laws.

The Debtor does not anticipate filing any Litigation Claims. However, the Plan preserves the rights to any Causes of Action that may be identified on or after the Effective Date.

### I. Sources of Cash for Plan Distributions

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary to make payments pursuant to the Plan to holders of the Claims against and Interests in the Debtor shall be obtained from the Cash balances of the Debtor's Estate, including Cash from future revenue of the Reorganized Debtor and the proceeds of the preferred equity to be issued pursuant to the Plan.

### J. Exemption from Certain Transfer Taxes

Any sales by the Debtor or the Reorganized Debtor shall be free of any transfer or similar taxes as allowed by Section 1146(c) of the Bankruptcy Code.

### K. Release of Liens

Except as otherwise provided in the Plan, the Confirmation Order or in any contract, instrument, release, or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against the property of the Debtor's Estate shall be fully released and discharged.

# ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.      Distributions for Claims or Interests Allowed as of the Effective Date**

Except as otherwise provided herein or as ordered by the Court, distributions to be made on the Effective Date and on account of Claims or Interests that are Allowed Claims or Allowed Interests as of the Effective Date shall be made on the Effective Date.  Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is reasonably practicable.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions to Class 2 General Unsecured Claims that first become Allowed Claims or Allowed Interests after the Effective Date shall be made reasonably promptly following the date on which the Claim is Allowed and the holder's distribution is determined, unless otherwise provided in this Plan, or any contract, instrument, or other agreement created in connection with the Plan.

**B.      Interest on Claims or Interests**

Except for the Claims of Western and the Secured Tax Authorities, and the quarterly yield of 12% payable on the Preferred Equity, post-petition interest shall not accrue or be paid on any Claims or Interests, and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Interest.  Interest shall not accrue or be paid upon any Disputed Claim or Disputed Interest in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

**C.      Distributions by Plan Administrator**

Reorganized Debtor shall make all distributions required under this Plan on account of Claims against and Interests in the Estate.  Reorganized Debtor shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court.

**D.      Delivery of Distributions and Undeliverable and Unclaimed Distributions**

*1.      Delivery of Distributions*

Subject to Bankruptcy Rule 9010, distributions under this Plan shall be made at the address of each holder of an Allowed Claim, as set forth on the proofs of claim filed by such holders or the Debtor's Schedules (or at the last known address of such holder as of the Confirmation Date if the Debtor has not been notified in writing of a change of address).

### 2. *Undeliverable and Unclaimed Distributions*

If any distribution to the holder of an Allowed Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. All claims for undeliverable distributions shall be made on or before the later of (i) the first anniversary of the Effective Date; or (ii) ninety (90) days after the date on which the Claim in question becomes Allowed. After such date, all unclaimed property shall revert to Reorganized Debtor, and the Claim of any holder with respect to such property shall be forever barred.

### E.     Means of Cash Payment

Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the payor shall determine in its sole discretion.

### F.     Withholding and Reporting Requirements

In connection with the Plan and all distributions thereunder, Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

### G.     Setoffs

#### 1. *By Debtor*

Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy laws, but shall not be required to, setoff against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or its Estate of any such claim that the Debtor may have against such holder.

#### 2. *By Non-Debtor*

Unless otherwise authorized by a Final Order, any holder of a Claim must assert any setoff, recoupment, or other defensive rights against a claim by a Debtor against such entity by filing an appropriate motion seeking authority to use such defensive claim on or before the Confirmation Date or will be deemed to have waived and be forever barred from asserting any right to setoff against a Claim by a Debtor notwithstanding any statement to the contrary in a

proof of claim or any other pleading or document filed with the Bankruptcy Court or delivered to the Debtor.

### H. Fractional Dollars

Notwithstanding any other provision of the Plan, Reorganized Debtor shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### I. Bar Date

Failure to file a proof of claim by the Bar Date shall forever prevent the holder of a Claim or Interest from asserting such Claim or Interest against or in the Debtor or Reorganized Debtor.

# ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES-

### A.    Contracts and Leases

Except as otherwise provided in the Plan, the Confirmation Order, or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, each of the prepetition executory contracts and unexpired leases to which Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases, shall be deemed assumed by the Debtor effective on the Confirmation Date and subject to the occurrence of the Effective Date, unless such contract or lease (i) previously (a) shall have been assumed or rejected by the Debtor or (b) shall have expired or terminated pursuant to its own terms, or (ii) is listed on the schedule of rejected contracts and leases attached hereto as **Plan Exhibit A**.  Any monetary amounts by which each executory contract and unexpired lease to be assumed under the Plan may be in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure on the Effective Date or as soon thereafter as practicable.   In the event of a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Debtor or any assignee of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption or assignment, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption and, as the case may be, assignment.  The Confirmation Order shall constitute an order of the Court approving the assumptions (as assignments, as the case may be) described in this Article VII.A, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

### B.    Rejected Contracts and Leases

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Debtor shall reject each of the executory contracts and unexpired leases listed on **Plan Exhibit B**; *provided*, *however*, that nothing contained in this Article VII shall constitute an admission by the Debtor that such contract or lease is an executory contract or unexpired lease or that the Debtor or its successors and assigns has any liability thereunder.  The Confirmation Order shall constitute an order of the Court approving the rejections described in this Article VII.B, pursuant to section 365 of the Bankruptcy Code, as of the Confirmation Date.

### C.    Rejection Damages Bar Date

If the rejection of an executory contract or unexpired lease pursuant to Article VII.B above gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor or its Estate or against Reorganized Debtor in its administration of the Plan or its respective successors or properties unless a proof of Claim is filed and served on the Debtor and counsel for the Debtor within thirty (30) days the Confirmation Date or such other date as prescribed by the Court.  Any such Claim timely filed shall be a Class 2 Claim.

## D.    Indemnification Obligations

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, or any other document or applicable law shall be rejected as of the Effective Date of the Plan, to the extent executory.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING DISPUTED,
## CONTINGENT AND UNLIQUIDATED CLAIMS
## AND DISPUTED INTERESTS-

### A.    Claims Objection Deadlines; Prosecution of Objections

Except as otherwise provided in the Plan or any contract, instrument or other agreement created in connection with the Plan, from the Effective Date through the Claims Objection Deadline (which may be extended by an order of the Court), Reorganized Debtor shall have the exclusive authority to file objections to Claims against or Interests in the Estate with the Court and serve such objections upon the holders of each of the Claims or Interests to which objections are made.  Nothing contained herein, however, shall limit the right of Reorganized Debtor to object to Claims against or Interests in the Estate, if any, filed, amended or reclassified after the Claims Objection Deadline.  Subject to the limitations set forth in Article IV.I.4 of this Plan, Reorganized Debtor shall be authorized to, and shall, resolve all Disputed Claims solely against or Disputed Interests by withdrawing or settling such objections thereto, or by litigating to judgment in the Court or such other court having jurisdiction the validity, nature and/or amount thereof.

### B.    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all objections to such Disputed Claim or Disputed Interest have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim or the Disputed Interest, or some portion thereof, has become an Allowed Claim or Allowed Interest.

### C.    Distributions After Allowance

Reorganized Debtor shall make payments and distributions to the holder of any Disputed Claim that has become an Allowed Claim as soon as reasonably practicable following the date that such Disputed Claim becomes an Allowed Claim and the holder's distribution is determined.  Such distributions shall be made in accordance with the Plan.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN-

A.      **Conditions to Confirmation**

The following are conditions precedent to the occurrence of the Confirmation Date:

1.      the entry of an order finding that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and

2.      the proposed Confirmation Order shall be in a form and substance reasonably acceptable to the Debtor.

B.      **Conditions to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in order for the Plan to become effective:

1.      The Confirmation Order shall have been entered and become enforceable pursuant to Bankruptcy Rule 7052 and not be the subject of a stay under Bankruptcy Rule 7062 and shall authorize and direct the Debtor to take all actions necessary or appropriate to enter into, implement, and consummate the instruments, releases, and other agreements or documents created in connection with the Plan.

2.      All Plan Exhibits shall be in form and substance reasonably acceptable to the Debtor and shall have been executed and delivered.

3.      All actions, documents and agreements necessary to implement the Plan shall have been effectuated or executed, including, without limitation, that the Preferred Equity to be issued under the Plan shall be fully subscribed and funded.

C.      **Waiver of Conditions**

Each of the conditions set forth in Articles IX.A and IX.B of the Plan may be waived in whole or in part by the Debtor, without any other notice to parties in interest or the Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation or the Effective Date may be asserted by the Debtor or Reorganized Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor or Reorganized Debtor). The failure of the Debtor or Reorganized Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

# ARTICLE X
# EFFECT OF PLAN CONFIRMATION-

## A.    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims and Interests, and their respective successors and assigns.

## B.    Releases

### 1.    Releases by the Debtor

On the Effective Date, the Debtor shall release unconditionally its current partners, advisors, accountants, investment bankers, consultants, and attorneys, from any and all claims, obligations, suits, judgments, damages, rights, causes of action, and liabilities whatsoever (other than the right to enforce the performance of their respective obligations, if any, to the Debtor or Reorganized Debtor under the Plan and the contracts, instruments, releases and other agreements delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act or omission, transaction, event, or other occurrence taking place on or after the Petition Date and prior to or on the Effective Date and in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, including Reorganized Debtor in its role in administering the Plan.

### 2.    Releases by Holders of Claims and Interests

On the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, in consideration for the obligations of the Debtor and Reorganized Debtor under the Plan and the Cash and other contracts, instruments, releases, agreements or documents to be delivered in connection with the Plan, each entity (other than a Debtor) that has held, holds or may hold a Claim or Interest, as applicable, will be deemed to forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the Debtor's or Reorganized Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place at any time on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement that such entity has, had or may have against the Debtor; *provided, however*, that the Plan does not release, enjoin, or otherwise affect in any way any Claims by any party against any and all former partners of the Debtor and any other non-Debtor third party.

3.      *Temporary Injunction*

Upon Confirmation of the Plan, all creditors of Debtor having an Allowed Claim herein shall be temporarily enjoined, pursuant to Section 105 of the Code, from proceeding against any officer, director, shareholder, employee, or other responsible person of Debtor, individually, including, but not limited to, Woodrow Brownlee and David Burgher, for the collection of all or any portion of their Allowed Claim, said injunction to remain in effect only for so long as the Debtor complies with the terms of the Plan.  Any violation of the Plan that remains uncured for thirty (30) days after receipt by the Debtor of written notice from any party affected by such violation, shall automatically and without order of the Court result in the dissolution of the injunction granted hereunder as to said affected party.

## C.      Discharge of Claims

Pursuant to section 1141(d)(1) of the Bankruptcy Code, Confirmation will discharge Claims against the Reorganized Debtor and no holder of a Claim against the Reorganized Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against the Reorganized Debtor, its successors or property, except as expressly provided herein.

## D.      Exculpation and Limitation of Liability

Neither the Debtor, nor any of its respective present or former partners (who were partners on the Petition Date), advisors or attorneys, shall have or incur any liability to, or be subject to any right of action by, any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, shareholders, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission occurring on or after the Petition Date in connection with, relating to, or arising out of, the Debtor's Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan, *provided, however*, that the Plan does not release or otherwise affect any pre-petition Claim against any former partner of the Debtor who served in such position prior to, but not on or after, the Petition Date.

## E.      Injunction

Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, hold or may hold a Claim or other debt or liability against the Debtor or its Estate are permanently enjoined from taking any of the following actions against the Debtor or its Estate, the Reorganized Debtor, or any of its property on account of any such Claims or Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any

debt, liability or obligation due to the Debtor or its Estate; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, *however*, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.

By receiving notice of the Plan and the Confirmation Order, each holder of an Allowed Claim or Allowed Interest will be deemed to have specifically consented to the injunctions set forth in this Article X.E.

### F. Satisfaction of Subordination Rights

Nothing in this Plan shall affect any rights and claims between or among Claimholders relating in any manner whatsoever to distributions on account of Claims against or Interests in the Debtor, based upon any subordination rights, whether asserted or unasserted, legal or equitable. Distributions to the various Classes of Claims and Interests hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Claimholder or Interestholder by reason of any subordination rights or otherwise, so that each Claimholder and Interest holder shall have and receive, the benefit of the distributions in the manner set forth in the Plan, any beneficiary of such subordination rights shall have no claim or cause of action against the Debtor or any Cash or property to be distributed under the Plan and must assert such subordination rights directly against Claimholders or Interestholders subject to such subordination rights.

### G. Settlement Authority

Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various Claims against it and/or claims that it may have against other Persons. The Debtor expressly reserves the right (with Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and claims that it may have against other Persons up to and including the Effective Date. After the Effective Date, such rights shall lie solely with Reorganized Debtor pursuant to Article V.H of the Plan.

## ARTICLE XI
## RETENTION OF JURISDICTION-

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(i) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(ii)     Hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of its Estate, wherever located;

(iii)     Hear and determine all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Debtor may be liable, including, if necessary, the nature or amount of any required Cure of the liquidation or allowance of any Claims arising therefrom;

(iv)     Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

(v)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

(vi)     Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(vii)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(viii)     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Court including, without limitation, the Confirmation Order;

(ix)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code, *provided, however*, that from and after the Effective Date the payment of fees and expenses of the Professionals of the Reorganized Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Court;

(x)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain

interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(xi)    Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xii)   Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

(xiii)  Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(xiv)   Hear and determine disputes with respect to Reorganized Debtor's administration of the Plan, and any disputes with respect to professional advisors retained in conjunction with administration of the Plan, including but not limited to disputes relating to compensation of such professional advisors;

(xv)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(xvi)   Enter a final decree closing the Chapter 11 Case.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS-

### A.    Bar Dates for Certain Claims

*1.    Administrative Claims Bar Date*

The Confirmation Order will establish an Administrative Claims Bar Date for filing Administrative Claims, which date shall be ten (10) days after the Effective Date. Holders of asserted Administrative Claims, except for Professional Fee Claims, not paid prior to the Effective Date shall submit requests for payment of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. The notice of the Effective Date to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth such date and constitute notice of this Administrative Claims Bar Date. The Debtor or Reorganized Debtor in administering the Plan, as the case may be, shall have ninety (90) days (or such longer period as may be allowed by order of the Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims.

2. *Professional Fee Claims; Substantial Contribution Claims*

All Persons requesting compensation or reimbursement of Professional Fee Claims pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the Debtor prior to the Effective Date (including requests under section 503(b)(4) of the Bankruptcy Code by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file and serve on Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than ninety (90) days after the Confirmation Date, unless otherwise ordered by the Court (the "Professional Fee Bar Date"). Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on Reorganized Debtor and the requesting Professional or other entity in accordance with the local rules of the Court.

### B.      Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, shall be paid on the Effective Date. Any other fees pursuant to this section which the Court shall determine after the Effective Date shall be paid as soon as reasonably practicable following the Court's determination. Following the Effective Date, except for fees to be paid pursuant to this section relating to disbursements, neither the Debtor nor its Estate shall thereafter be liable for the payment of any additional fees under 28 U.S.C. § 1930.

### C.      Amendment or Modification of the Plan

The Debtor may alter, amend, or modify the Plan or any Plan Exhibits under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan.

### D.      Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Court to be invalid, void or unenforceable, the Court, at the request of Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### E. Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

### F. Plan Supplement

Any and all exhibits, lists or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court no later then May 9, 2011. Upon its filing, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours. Claimholders and Interestholders may obtain a copy of the Plan Supplement upon written request to counsel for the Debtor. The Debtor explicitly reserves the right to modify or make additions to or subtractions from any schedule to the Plan and to modify any exhibit to the Plan prior to the Confirmation Hearing.

### G. Revocation, Withdrawal or Non-Consummation

The Debtor reserves the right, to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan or if Confirmation or Consummation does not occur, then, (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor or any other Person, (b) prejudice in any manner the rights of such Debtor or any other Person, or (c) constitute an admission of any sort by the Debtor or any other Person.

### H. Notice

Any notice required or permitted to be provided to the Debtor under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

*If to the Debtor*:

MCGUIRE, CRADDOCK & STROTHER, P.C.
2501 N. Harwood
Suite 1800
Dallas, Texas 75201
Attn: J. Mark Chevallier, Esq.

## I.    Governing Law

Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a Plan Exhibit provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflicts of law of such jurisdiction.

## J.    Term of Injunctions or Stay

With respect to the Debtor and Reorganized Debtor, all injunctions or stays provided for in the Chapter 11 Case under section 105, 362 or 524 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall be permanent.

Dated: Dallas, Texas
      May 3, 2011

                                                  VILLAGE AT CAMP BOWIE I, LP, a Texas
limited partnership, Debtor and Debtor-in-Possession


By: VCBGP I, LLC, a Texas limited liability company, its General Partner


          By: /s/Woodrow R. Brownlee   (05/03/11)
          Name:  Woodrow R. Brownlee
          Title:  Manager