

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed January 11, 2012**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CHAPTER 11 |
| VILLAGE AT CAMP BOWIE I, L.P, § | |
| § | |
| DEBTOR. § | CASE NO. 10-45097 (DML) |
| § | |

### MEMORANDUM ORDER

Before the court is *Western Real Estate Equities, LLC's Motion for Stay Pending Appeal* (the "Motion") at docket number 353 filed by Western Real Estate Equities, LLC ("Western"), by which Western asks that this court stay pending appeal the effect of its order of January 9, 2012 (the "Confirmation Order") confirming Debtor's Third Amended Plan of Reorganization (the "Plan"). The court conducted a hearing on the Motion on January 9, 2012, during which it heard testimony from Woodrow "Bo"

1

Brownlee ("Brownlee"), a principal of Debtor, and John Sledge ("Sledge"), a principal of Western and received into evidence certain exhibits offered by Western.

This matter is within the court's core jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(L) and (O); Fed. R. Bankr. P. 8005. This memorandum order contains the court's findings and conclusions. Fed. R. Bankr. P. 7052 and 9014.

Discussion

The Plan represents Debtor's response to this court's memorandum opinion of August 4, 2011 (the "August 4 Opinion"). The August 4 Opinion ruled that a prior version of the Plan could not be confirmed, but that the Plan would be confirmed with changes, including an increased interest rate payable to Western. The Plan satisfies the court's concerns and, thus, the court entered the Confirmation Order. Western promptly filed both its notice of appeal of the Confirmation Order and the Motion.

In deciding whether the effectiveness of the Confirmation Order should be stayed, the court must consider (1) the likelihood that Western will prevail on appeal; (2) the harm to Western if the Confirmation Order is not stayed and the *status quo* so preserved; (3) the harm to other parties (principally Debtor and its investors) if a stay is granted; and (4) public policy. *See, e.g., In re Red Mountain Mach. Co.*, 451 B.R. 897 (Bankr. D. Ariz. 2011). The burden of showing a stay should issue is on Western. *See In re Cusson*, 2008 WL 594456, at *2 (Bankr. D. Vt. Feb. 22, 2008) (stating that a stay pending appeal "'requires a substantial showing on the part of the movant'") citing *In re Lickman*, 301 B.R. 739, 742 (Bankr. M.D. Fla. 2003). In the case at bar, the court concludes that none of the stated factors favors granting a stay and that Western has not met its burden.

First, although there is no clear controlling precedent respecting the issues addressed, the court believes the August 4 Opinion is correct. In the court's opinion the Confirmation Order more likely than not will be affirmed.

The fundamental question presented by this case is whether a plan may be confirmed, based on the vote of a class that need not be impaired, over the dissent of the only necessarily impaired class of claims when that is the only way to preserve equity interests. Where, as here, a debtor's value exceeds its debt, the Bankruptcy Code should effect the protection of equity due to the corollary to the absolute priority rule: that senior debt, if fully satisfied, is not entitled to a greater return at the expense of junior – in this case equity – interests. *See In re Granite Broad. Corp.*, 369 B.R. 120 (Bankr. S.D.N.Y. 2007); *In re MCorp. Fin., Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992).

Second, the court is confident that an appellate court can fashion a suitable remedy if Western prevails, notwithstanding the Confirmation Order and Plan becoming effective. Western claims its appeal would be cut off as moot if the Motion is not granted. But this case presents far fewer difficulties in structuring a remedy on appeal than were faced in *In re Scopac*, 624 F.3d 274 (5th Cir. 2010) *amended by In re Scopac*, 649 F.3d 320 (5th Cir. 2011). Here the only changes in the *status quo* will be (1) payments pursuant to the Plan to Western itself and to unsecured creditors, (2) leasing of parts of Debtor's property and (3) use of moneys contributed by investors.

While Sledge testified that he feared Debtor would sell pieces of its property, he also admitted he would have the opportunity to oppose those sales in court. Trial Record ("TR") at 2:49:40. Further, the proceeds of sales would largely benefit Western, and required debt to equity ratios would protect Western's collateral coverage. Western, as a

secured creditor, which is how the court must view it, will therefore be fully protected against loss by reason of sales

Thus, as Sledge further testified, assuming Debtor's leasing efforts would not have to be undone (and Western's counsel indicated Western would be prepared to allow Debtor freedom to lease even if the effectiveness of the Confirmation Order is stayed), the only requirement to return to the *status quo ante* would be to replenish the $1,500,000 put up by Debtor's investors to the extent it had been spent (much of it used to pay Western and unsecured creditors; Western itself intends payment of unsecured creditors). TR at 2:31:50-2:33:47. Return of investor funds would not be an insuperable burden for Western, since any of the funds used would be paid to Western or would satisfy debt Western would satisfy in any event (or be spent on Western's collateral). The court concludes, therefore, that Western need not suffer loss of its appellate rights should the Motion be denied.

Even should mootness of Western's appeal be a real risk, though, that is insufficient to justify a stay. The case law is virtually uniform that the possibility of an appeal being mooted is insufficient to warrant delay in making effective the appealed order. *See In re The Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987)(stating that the fact that an appeal may be rendered moot "is insufficient by itself to establish irreparable injury."); *In re Baldwin United Corp.*, 45 B.R. 385 (Bankr. S.D. Ohio 1984).

Third, on the other hand, the situation is very different for Debtor and its investors. Until the Plan is effective, Debtor will not have access to the $1,500,000 put up by the investors. This, together with other problems created for leasing by the uncertainty of Debtor's position should a stay be granted as to the Confirmation Order,

would surely hamper Debtor's operations, even while Western's interest continued to run and its costs and fees continued to accumulate. Brownlee testified that Debtor's brokers have had difficulty in marketing leases while Debtor is in chapter 11. TR at 2:06:03-2:06:45. Specifically, Brownlee testified that provisions of the cash collateral agreement between Debtor and Western (which makes all leases subject to Western's approval) have made it difficult to negotiate leases. TR at 2:06:48-2:06:55. Brownlee testified that this had caused Debtor to lose potential tenants. TR at 2:02:30. Brownlee additionally testified that though there had been recent positive momentum in signing new tenants, he feared that a stay of the Confirmation Order would have a negative impact and potentially impair Debtor's efforts to maximize occupancy in the property. TR at 2:07:30.

Moreover, although interest would be payable to Western under the Plan at the rate of 6.4%, as opposed to the present contract rate of 4.3% and a default rate of 6.3% (to which Western is entitled), the latter two rates are tied to the London Interbank Offered Rate ("LIBOR"), which is variable. As Sledge admitted, many national leaders are concerned about increased inflation – which would lead to an increase in LIBOR. 2:35:04-2:35:15. Therefore, though at this writing interest payments will go up a little for Debtor upon the Plan's effectiveness, it is as likely as not that in the longer term Debtor would face higher interest payments while the Plan is not effective.

Finally, fourth, public policy is better served by allowing the Confirmation Order to become effective. Debtor's property is an important element in the economy of Southwest Fort Worth, and it does that economy no good for the Village at Camp Bowie to stagnate for up to a year or more while Debtor is trapped in the limbo created by a stay pending appeal. Moreover, the absolute priority rule and its corollary protecting junior

interests are indicative of public policy. The absolute priority rule , which is the codification of long-standing law requiring that a plan be "fair and equitable", is one of the key elements of corporate reorganization law and so represents settled public policy. The Plan serves that policy and, hence, staying the Plan's (and Confirmation Order's) effect cannot be favored by public policy.

For the foregoing reasons the Motion must be, and it hereby is, DENIED.

It is so ORDERED.

# # # # END OF MEMORANDUM ORDER # # # #